# WINDSOR COUNTY.

### FEBRUARY TERM, 1843.

PRESENT HON. STEPHEN ROYCE,
     "   ISAAC F. REDFIELD,
     "   MILO L. BENNETT,   } *Assistant Justices.*
     "   WILLIAM HEBARD,

---

### JOHN PETTES *v.* DANIEL MARSH.

Trover may be maintained by an officer, against a debtor, for property which had been owned and possessed by the debtor, and receipted by him to the officer, as attached, though it was not actually seized, or even seen, by the officer.

THIS was an action of trover for three hundred and fifty sheep. Plea, not guilty. Issue to the court.

On trial, the plaintiff read in evidence the following receipt and endorsement thereon :

"Hartford, Nov. 14, 1839.

"Received of Moses Montague, deputy sheriff, three hundred and fifty sheep, of the value of six hundred dollars, which we agree to redeliver on demand. Said property said Montague has this day attached on a writ of attachment in favor of the bank of Woodstock v. Daniel Marsh, Leonard Marsh, and Thomas W. Pitkin, demanding in damages eight hundred dollars. Returnable at November term, 1839, of Windsor county court. (signed) DANIEL MARSH.
                        GEORGE UDALL."

"Hartford, Aug. 13, 1840.

"I acknowledge a legal demand of the within described property by a proper officer.
           (signed)     DANIEL MARSH."

It appeared that Moses Montague was the deputy of the plaintiff, then sheriff of Windsor county ; that said Montague duly returned the writ mentioned in said receipt, with his

return thereon, that the same was served by the attachment of 350 sheep; that such proceedings were thereon had, that said bank recovered a judgment at the May term of Windsor county court, 1840; and, that execution was issued on said judgment, and, within thirty days, was delivered to said Montague, still deputy sheriff, who within the life thereof, on the 13th day of August, 1840, demanded the said sheep of the defendant whereon to levy said execution, but the same were never delivered to, or obtained by, the officer, and the execution remained unsatisfied.

It also appeared that, at the time of the service of said writ, the defendant owned, and then had on his farm, five hundred sheep; that, on the 16th of July, 1840, having become insolvent, he made an assignment of his property to John Strong, for the benefit of certain preferred creditors, and that, among that property he delivered said Strong 199 sheep, being all he had left of the sheep he owned in November, 1839. What had become of the rest of the sheep did not appear. It also appeared that when said Montague came to serve said writ, it was in the evening, and he did not see said sheep or take any possession thereof; and that it was on that occasion, and at that time, that the receipt was signed by the defendant and delivered to said Montague.

Upon these facts the court rendered judgment for the plaintiff to recover the amount of the execution in favor of said bank, it being less than the value of the 350 sheep. To this decision the defendant excepted.

*Charles Marsh*, for the defendant, admitted that if the action had been assumpsit on the receipt, the defendant would have been restrained from contradicting, by evidence, the actual attachment of the property, and its delivery to him by the officer, but would have been concluded by the terms of the receipt; but he maintained that it was competent to the defendant to go into such showing, and it would be a good defence, in an action of trover.

Property, either absolute or qualified, he contended, was essential to maintain trover. In this case, no such property existed in the officer, as the case shows that the sheep were not actually attached by him, and that he had no possession of them. What is an attachment? Chief Justice Parsons,

in *Lane & others* v. *Jackson*, 5 Mass. 163, says : " We are of opinion that to constitute an attachment, the officer must have the actual possession and custody of the goods as on a seizure upon execution. To constitute an arrest, the body must be under the control of the officer." In 12 Mass. 497, Parker, J. says : " To constitute an attachment, there must be an actual seizure of the goods by the officer. Not that every article must be taken hold of, but that he must be in view of the whole, with the power of taking possession.

This is a case of mere contract on the part of the defendant, for which the liability incurred by the officer to the creditor, was a sufficient consideration ; and defendant, in an action on the contract, would be estopped from denying the existence, and the attachment of the property. But trover involves the question of title ; and in this case, the title in the officer was merely fictitious. No case can be found where the plaintiff recovered, in trover, on a fictitious title, and a fictitious conveyance to defendant. In all cases where trover has been sustained, on a receipt for property, taken on attachment or execution, it has appeared that the property was in the actual custody of the officer, and had been delivered to defendant. The case of *Sibley* v. *Storey*, 8 Vt. R. 15, is the first case reported in this state, of trover against a receiptor ; and, in that case, the defendant admitted his refusal to deliver the property, when demanded, and claimed it by purchase of the judgment debtor, previous to the attachment.

This case turns upon the question, whether the defendant is prevented, by his receipt, from showing that the plaintiff had no title to the property, and that there could, therefore, be no conversion. Such effect given to the receipt, would be that of an estoppel ; but can any writing have that effect, in an action of trespass or trover ? From the nature of these actions every question arising in them, is matter *in pais ;* and no writing can be given by defendant which will conclude him from going into the merits of the case. Such writing may, indeed, be evidence against him, but is open to explanation, and may be contradicted. If a defendant should even admit, in writing, that he committed the trespass complained of, or converted the goods in question, this

would be mere evidence, or matter *in pais*, and he might show that he was under a mistake. The receipt, in the present case, is evidence, tending to show that the property was attached and delivered to the defendant, and may be explained or rebutted. Being thus open to explanation, the case furnishes one which must be fatal to this action, since it appears that the officer seized no property, and saw none, and therefore delivered none to the defendant, and consequently there could have been no conversion by him.

The officer could not maintain trover against a stranger for this property. He would be met by the objection that he had acquired no right by actual attachment; and it would be no answer to it, to say that Marsh had given him a receipt admitting the attachment. If such receipt would not be evidence of the attachment and delivery in one case, upon what principle can it be made evidence of them in the other?

The action of trover affords no advantage over assumpsit, except in the power it gives the plaintiff to incarcerate the defendant. It is turning a mere contract into a tort, for a purpose abhorrent to the feelings of humanity, and contrary to the spirit of modern legislation.

*O. P. Chandler*, for plaintiff.

Two questions arise in this case. 1. Whether the evidence offered was admissible to contradict the receipt. 2. Whether, independent of the evidence as against defendant, the evidence offered tended to impeach the attachment, so as to defeat the officer's claim to title by means of it.

I. It was not competent for defendant to offer evidence tending to show no sufficient attachment, as he is concluded by the receipt. *Spencer* v. *Williams*, 2 Vt. R. 212; *Allen* v. *Butler et al.*, 9 do. 122; *Jewett* v. *Torrey*, 11 Mass. R. 219; *Lyman* v. *Lyman*, 11 do. 317.

II. The evidence was not competent, as it did not tend to show the attachment insufficient. The officer took possession of the property through the bailee. Marsh, himself, having possession of the sheep, agreed to keep them. *Sibley* v. *Story*, 8 Vt. R. 18; Story on Bailments, 95.

Justice and policy require the adoption of this rule. The officer is about to attach,—a receipt man is ready to receipt the property,—the intent is to save the expense of an actual

attachment, by taking other possession; and if, under such circumstances, the receiptor, in an action of *assumpsit*, is not permitted to show the contrary, as ruled in the case of *Sibley* v. *Story*, why should he in this action? If the officer had no special title by means of the attachment, why might not the receiptor show this in an action of assumpsit, to make it appear that he was bound to deliver it to the real owner? Simply because he may not controdict, by parol, his written receipt.

The receipt acknowledges that the goods were in possession of the officer; for receiving them from him implies this. How, then, should defendant be permitted to deny this fact —the only one alleged to be wanting to establish the attachment.

Again: the receipt expresses, in direct terms, that the sheep were attached; and this was, undoubtedly inserted in the receipt, to estop the defendant from denying it; and policy and justice, as well as the rules of law, require that he should be estopped. *Hawes* v. *Watson*, 9 C. L. R. 170; *Harmon* v. *Anderson*, 2 Camp. R. 243; *Stannard* v. *Dunkin*, do. 344; *Chapman* v. *Searle*, 3 Pick. 38; *Parsons* v. *Strong*, 13 Vt. R. 235.

The opinion of the court was delivered by

Royce, J. — The sole question is, whether the action of trover can be sustained upon the facts appearing in this case. That trover will lie, in an ordinary case, in favor of an officer against the receiptor of goods attached, was fully decided by this court in *Sibley* v. *Story*, 8 Vt. R. 15. But it is urged, that, in this instance, there was no sufficient attachment of the sheep, to vest in the officer the requisite legal interest to support this form of action. We are asked to treat the attachment, for the present purpose, as if no such property existed at the time of the alleged service of the writ, — to regard it, in all respects, as a fictitious attachment. And whilst it is conceded that, in this view, it would be sufficient to uphold the *contract* of the receiptors, it is insisted that it cannot subject them in tort.

It is not my purpose to controvert the able argument which has been founded upon this view of the case. Did we consider that the transaction must necessarily be regarded

WINDSOR,
*February,*
1843.

Pettes
*v.*
Marsh.

in this light, I should be disposed to yield to the argument. But we think the attachment ought not to be considered fictitious. The case shows that this defendant actually owned, and had upon his farm, five hundred sheep ; that the officer went there to make service of the writ ; and that, without requiring the ceremony of going to view the sheep, or separating the flock, the defendant, and another person, executed a receipt for 350 of the sheep, which the officer returned, as being attached upon the writ. Now there is no doubt but that the legal requisites of a valid attachment are such as the counsel has contended for. It is nothing less than the actual seizure of property, or having it within the power and control of the officer. But this definition is framed with reference to an attachment, in the strict sense of a proceeding altogether *in invitum,* — the power of the law operating against the will, or without the concurrence, of the party affected by it. As against an unwilling party, or a third person, whose rights are affected, it must, doubtless, conform to this description. It is competent, however, for a party to dispense with forms or ceremonies which he might have insisted on, and still leave the attachment effectual as against himself. He may consent to be treated as being under arrest, when the officer has not acquired the actual control of his person ; and so he may consent that his goods shall be treated as being attached, when the officer has not actually seized them. In each case it is but submitting to the power of the law, without constraint. And if, under such circumstances, the officer returns the arrest, or attachment, with the party's assent, that return should be, as it legally is, conclusive evidence of the fact. And if the principle here advanced be a sound and just one, the present is surely a strong case in illustration of it. The property did exist, and was attachable ; and but for the voluntary arrangement between the defendant and the officer, it would have been regularly seized and removed. But the defendant chose to have it treated as being attached, (waiving the ceremony of actual seizure and removal,) and undertook to keep it for the officer, who, with his assent, charged himself with a liability for it. He cannot now say, that his subsequent possession of the property was not subservient to the officer's right. It appears that the property was afterwards duly demanded,

Henry
v.
Chester.

but, having been previously disposed of, was not restored. We think, that upon such a state of facts, the action of trover can be maintained.    Judgment of county court affirmed.