DAVID S. ABBOTT *v.* SAMUEL S. KIMBALL AND SAMUEL JEWETT.

Where property, attached upon mesne process, is sold by the attaching officer, a deputy sheriff, upon the writ, in pursuance of the Revised Statutes, chap. 28, §§ 48-52, and judgment is finally rendered in favor of the defendant, in the action in which the attachment was made, a refusal, on the part of the officer, to pay to the defendant the amount, for which the property was sold, will not render him a trespasser *ab initio,* so as to render him liable in trover for the property.

The only proper action against the deputy, in such case, is for money; and in that action the attaching creditor cannot be joined, unless he has been jointly concerned in the detainer.

And if the deputy, in such case, made the sale without notifying the defendant in that action, this would not make the attaching creditor jointly liable with the deputy, in any way, unless he did something more than request a sale. The mere joining with the deputy in a special plea, where they have been sued jointly in trover for the property, when there is also a general several plea upon the record, will not involve the creditor with the officer, nor excuse the court from giving proper instructions to the jury, as to all the points in the case, as to both defendants, *considered separately,* whether particularly requested upon all the points, or not.

Trespass on the case, for any mere non-feasance of the deputy, will only lie against the sheriff.

---

---

An attaching creditor can in no case be held jointly liable with the officer, for any wrong committed by the officer, unless he in some way participated in the wrong, or ratified and confirmed it, after becoming aware of it. .

Where property has been attached, and final judgment is rendered in favor of the defendant in the suit in which the attachment was made, *trover* will not lie against the attaching officer, a deputy sheriff, for neglect, in not keeping and taking suitable care of the property attached.

In order to sustain an action for an excessive attachment of property upon a writ, the plaintiff must allege and prove much the same, that he would in a suit for a malicious action,—that is, want of probable cause and malice express;—and the attaching creditor will ordinarily be the only person liable to such action.

This was originally an action of trover for four horses and five harnesses. After judgment for the plaintiff and review by the defendants, the plaintiff, by leave of the court, amended his declaration by filing several additional counts in case. In the first count the plaintiff alleged, that on the 25th day of November, 1842, the defendant Jewett and one Strong, then his partner, but since deceased, sued out their writ of attachment against the plaintiff, demanding, as damages, sixty dollars, and commanding the sheriff to attach the property of the plaintiff to the value of eighty dollars, and delivered the said writ to the defendant Kimball, a deputy sheriff, to serve and return, and that Kimball attached thereon five harnesses and four horses belonging to the plaintiff; that such proceedings were had in that suit, that the plaintiff, Abbott, recovered final judgment therein, in his favor; and the plaintiff averred, that it was the duty of the defendants to have carefully kept and preserved the said harnesses,—but that, in fact, they had neglected to keep them with care, but had suffered them to become rotten and worthless.

In the second count the matter of inducement was the same ; and the plaintiff alleged, that Kimball, after he had served and returned the writ against the plaintiff, by the direction and procurement of Jewett, sold the four horses attached for the sum of sixty two dollars, and that this was done without the knowledge or consent of the plaintiff, Abbott, and that, after final judgment had been rendered in favor of Abbott in that suit, he demanded the horses of the defendants,—but that they had refused to deliver them to him, or to pay him their value, or to pay him the sum for which they were

Abbott *v.* Kimball et al.

sold. In the third count the matter of inducement was substantially the same; and the plaintiff averred, that the property was attached by Kimball, by the direction of Jewett, and that its value was very much larger, (at least five times larger,) than the whole amount which Jewett and Strong claimed to recover in that suit, and that so great an amount of property was taken for the purpose of embarrassing the plaintiff and putting him to great expense and trouble.

The defendants pleaded the general issue, and also pleaded specially, setting forth the facts in reference to the suit in favor of Jewett and Strong against the plaintiff, as alleged in the declaration, and then averring, that, after the attachment, the plaintiffs in that suit applied to the defendant Kimball to sell the horses, in pursuance of the statute; that Kimball notified Abbott of this application, and then caused the horses to be appraised, and sold them for $62,00, pursuing in all respects the requisitions of the statute,—Rev. St. chap. 28, sec. 48–52,—describing particularly the steps taken; that the expenses of keeping and selling the horses amounted to $20,54; and that, after final judgment had been rendered in that suit in favor of Abbott, Kimball tendered to Abbott the amount for which the horses were sold, deducting the said sum of $20,54, and delivered to him the harnesses,—having safely and properly kept them. The plaintiff replied, traversing all the facts alleged in the plea. Trial by jury, December Term, 1845,—ROYCE, J., presiding.

On trial the plaintiff gave in evidence the files and records in the original suit against him in favor of Jewett and Strong; and also gave evidence tending to prove, that, soon after final judgment had been rendered in his favor in that suit, he demanded of the defendants the horses, or the amount at which they had been appraised, and the harnesses; and that the defendants then offered to the plaintiff the amount for which the horses had been sold, deducting the expenses of keeping and sale, and also offered to the plaintiff the harnesses,—all which the plaintiff refused to receive. The plaintiff also gave evidence tending to prove, that the harnesses had not been carefully kept by Kimball after they were attached, and that they had thereby become greatly reduced in value.

The defendants then gave evidence tending to prove all the facts alleged in their plea in bar, and also, that Kimball had not been guilty of any want of ordinary care in keeping the harnesses.

70,

The court instructed the jury, that, if the defendants had proved all the facts alleged in their plea in bar, the sale of the horses by Kimball was a legal sale, under the statute, and that, in that event, they would return a verdict against both defendants for the sum for which the horses were sold by Kimball, with interest from the time of the demand, and that Kimball had no legal right to deduct from that amount either the expenses of keeping the horses before the sale, or the costs of the sale;—that, if the jury did not find all the facts alleged in the plea substantially proved, especially the alleged notice, from Kimball to the plaintiff, that application had been made to him to have the horses appraised, &c., under the statute, (which was the only contested fact alleged in the plea in relation to the horses,) they would then consider the original declaration in trover supported in regard to the horses, and would return a verdict in favor of the plaintiff for the value of the horses, with interest from the time of the sale by Kimball, and that they would be at liberty to adopt the appraisal as evidence of the value, *if they thought proper;*— that, if they found that the harnesses had been kept by Kimball, after the attachment, with ordinary prudence and care, and that they had not depreciated in value from the want of such care, then the plaintiff could not recover any thing for the harnesses; but that, if they found that Kimball had not kept and preserved the harnesses with such care and prudence, they should add such sum to their verdict, as they found the harnesses had depreciated in consequence of the want of such care and prudence;—and that, if they found that the attachment of property, made by Jewett and Strong upon their writ against Abbott, was unreasonable and extravagant, in reference to the amount of their claim against him, and made with a view to perplex and harrass him, they could add to their verdict such sum, as they should consider the plaintiff had suffered from the excessiveness of the attachment.

The jury returned a verdict against both defendants for $171,00; and after verdict the defendants moved in arrest of judgment for the insufficiency of the plaintiff's declaration. The court overruled the motion and rendered judgment for the plaintiff upon the verdict. Exceptions by defendants.

*Poland* for defendants.

I. If the jury found, that Kimball gave no notice to the plaintiff of the application of Jewett and Strong to have the horses sold, that would give the plaintiff no right to maintain any action against Jewett. The property was in the custody of Kimball, the officer, and Jewett had a legal right to apply to him to have it sold; and if, in the course of the proceedings, the officer was guilty of any error, or omission of duty, Jewett is not responsible therefor. *Barnard* v. *Stevens et al.,* 2 Aik. 429. It may be said, that, as the defendants joined in a plea of justification, and that failed as to one, it failed as to the other, also; but in this case. the general issue was also pleaded, and all the evidence was equally applicable to that issue,— which is always several.

II. If the sale of the horses was regular and legal, the defendants contend :—

1. That no action sounding in *tort* can be sustained,—that if the officer, upon the termination of that suit in favor of the defendant therein, refused to pay over the avails of the property to him, the remedy must be in form *ex contractu :*—

2. That, at all events, Jewett is not liable. The property was legally attached, and was disposed of under the statute ; so that no action can be sustained for that. The officer holds the money, until the suit is terminated in favor of the defendant ; and the plaintiff in that suit, who never had, and was never entitled to have, the custody of that money, can in no manner be held liable for it. The statute,—Rev. St. 185, § 46, provides, that "the proceeds of the sale, after deducting the necessary charges thereof, shall be held by the officer, subject to the attachment, or attachments, and shall be disposed of in like manner, as the same property would have been held and disposed of, if it had remained unsold;" and section fifty of the same chapter, which governs this case, provides, that " the proceeds thereof shall be held and disposed of in the manner before provided in case of a sale by the consent of the parties, unless " &c. If, then, the sale be according to the directions of the statute, the *proceeds* have taken the place of the horses, and the accountability of the officer is the same, as for the property itself, if it had remained in his hands. *Adams* v. *Abbott,* 2 Vt. 383.

III. The officer had a right to deduct, from the sum for which

the horses were sold, the expenses of the keeping and the charges of the sale. While the property was under attachment in the officer's hands, the defendant was bound to pay the expenses of keeping; and if he would avoid this, he should either replevy it, or have it receipted. *Dean* v. *Bailey*, 12 Vt. 142. *Jackson* v. *Scribner*, cited in Ib. At all events, the officer is entitled to deduct the *charges* of the *sale;* for such is the express language of the statute.

IV. If Kimball neglected to take proper care of the harnesses, while under attachment, this, being a mere non-feasance, would not make him a trespasser *ab initio.* And Jewett can in no way be made liable for this neglect; for he had nothing to do with the harnesses after the attachment.

V. The third count added to the declaration, for making an excessive attachment, is fatally defective.

1. There is no allegation of malicious motive in Jewett.

2. It is not alleged, that the property was removed from the plaintiff's possession by the defendants, or either of them.

3. There is no allegation of damage in any manner.

*J. Cooper* for plaintiff.

The jury were correctly instructed, that, if the facts alleged in the plea in bar were found substantially true, the plaintiff was entitled to recover against both defendants.

The case shows, that the plaintiff demanded the horses, or their appraised value, of the defendants,—not of one of them,—and that the defendants made a tender of the avails of the sale, after deducting the expenses of keeping and selling. These were acts of the defendants jointly, for Jewett's benefit; for he was liable for the expenses. *Johnson* v. *Edson*, 2 Aik. 299. *Felker* v. *Emerson*, 17 Vt. 101. It makes no difference in principle, that Jewett chose to have the property sold, under the statute. The statute does not change the rights of the parties, by divesting the defendant of his property, when attached, provided he should eventually recover. The property was absolutely discharged by the judgment, and Jewett was bound to pay the sheriff's expenses. *Felker* v. *Emerson*, 17 Vt. 101. The act of applying the proceeds of the sale for this purpose was for Jewett's benefit, and he participated in it. This makes him guilty of a legal conversion. 3 Stark. Ev. 1500. No claim

appears to have been made in the court below, that, if one of the defendants was liable, both were not liable; and the question should not be entertained here, unless it appears that it was distinctly passed upon in the court below. *Barnard* v. *Stevens et al.,* 2 Aik. 429. 2 Vt. 383. In the case of *Lamb* v. *Day et al.,* 8 Vt. 407, this question was presented; and it would seem, that that was a stronger case for the defendant Day, than this is for Jewett. In this case it does appear, affirmatively, that Jewett did intermeddle with the property after the attachment; and even when the property was demanded, he did not deny having the control of the matter. In this particular this case differs from that of *Adams* v. *Abbott,* 2 Vt. 383.

The last count in the declaration states sufficiently a cause of action; it has been traversed and a verdict has passed; and no substantial reason appears, why the judgment upon the verdict should not be affirmed. *Battles* v. *Braintree,* 14 Vt. 348. Arch. Pl. 163. 1 Salk. 365.

The opinion of the court was delivered by

REDFIELD, J. There are numerous points in this case, upon some of which the court are not fully agreed. But having no difficulty in reference to many, we think it best to determine those.

1. The court charged the jury, that although the defendants made out all the facts alleged in their plea in bar, still the plaintiffs might recover, *in this form of action*, the amount of money for which the horses were sold, and interest from the time of the demand. No doubt, if the officer had no right to deduct the expenses of keeping and sale,—of which we say nothing, (not being agreed fully,—) the *officer* might be liable, in some form of action, for that amount. But it seems to us,—1, That in that case the officer is not liable in *trover.* A refusal to pay over the money, or claiming to retain part of it, upon grounds which are not well founded in law, will not make him a trespasser *ab initio.* And unless that is the case, *trover* will not lie, *even against the officer.* It is like any other refusal to pay over money in his hands. 2. That *trespass on the case,* for any mere *non-feasance* of the deputy, will only lie against the sheriff,—this never being sufficient to make him a *tort-feasor ab initio.* 3. That in no case can the creditor be jointly liable for any wrong of the officer, unless he in some way participated in it, or rati-

fied and confirmed it, after becoming aware of it. 4. That the only proper action, in this view of the case, against the deputy, is for money; and in that action the creditor cannot be joined, unless he has been jointly concerned in the detainer.

2. The court also charged the jury, that, if the officer made the sale without notifying the defendant, he did make himself a trespasser *ab initio*. But this will not make the creditor liable in any way, unless he did something more than request a sale,—which will be considered a *legal sale*. Possibly, if the creditor partakes in the wrong, or justifies it after knowing it, he should be held as a trespasser *ab initio*. But nothing of this kind appears in the case; and the mere joining in a special plea in bar, when there is also a general several plea on the record, ander which all this defence is competent, will not involve the creditor with the officer, nor excuse the court from giving proper instructions to the jury, as to all the points in the case, as to both defendants *considered separately*, whether particularly requested upon all the points, or not.

3. As to neglect in keeping the harnesses, the plaintiff doubtless has some remedy; but not in *trover*, it would seem,—1, For reasons already assigned, being mere non-feasance;—2, For the same reason the remedy in case should be against the sheriff;—and 3, The creditor cannot be joined, unless he participated in the wrong.

4. In regard to the right to sue for an excessive attachment, the questions as to the sufficiency of the proof and the declaration may be considered together. We think the plaintiff, to make his case, must allege and prove much the same, that he would in a suit for a malicious action,—that is, *want of probable cause and malice express*. In this view of the case it seems somewhat absurd to expect to involve the officer. The *party*, ordinarily, will be the only one liable. We have not examined critically, to see whether the proof or the allegations come up to this requisition of the law upon this point.

Judgment reversed, and case remanded for a new trial.