THOMAS HYDE *v.* JESSE COOPER.

*Officer.   Party.   Trespass.   Trespass ab initio.*

If an officer, in the discharge of his official duty, commits a trespass, and the party does not control the officer in any way, then the party cannot be implicated in the original wrong, and the expressing of an opinion, as to the act, under protest that he does not assume to direct or advise the officer, is not such an assent to the act, as to implicate the party.

But where the mistake is one of fact, and such, as makes the officer a trespasser and the party knowing all the facts consents to take the avails of a sale, or counsels the act, which creates the liability of the officer, (as a general rule,) he is implicated, to the same extent, as the officer.

When the party does not direct or control the course of the officer, but requires him to proceed, at his peril, and the officer makes a mistake of law in judging of his official duty, whereby he becomes a trespasser, by relation, the party is not affected by it even when he receives money which is the result of such irregularity, although he was aware of the course pursued by the officer.

In such a case, to implicate the party, there must be proof that he consented to the course of the officer, or that he subsequently adopted it.

TRESPASS for an ox. The action was originally brought before a justice of the peace, and came to the county court by appeal.

Plea, the general issue, and notice that the defendant would rely upon the following special matter, viz: That the ox in question was regularly attached on a writ in favor of the defendant, Cooper, against the plaintiff, Hyde; that judgment was rendered upon the same and execution issued thereon according to law, and that the avails of the said ox described in the plaintiff's declaration, were applied upon said execution. Trial by the jury.

On the trial, the plaintiff offered testimony tending to prove, that about the first of April, 1852, the defendant prayed out a writ in his favor against the present plaintiff, and placed the same in the hands of one John Guild, deputy sheriff, who served the same, by attaching the ox in question, and soon after notified the defendant, Cooper, that the expense of keeping the ox would be as much as he would sell for, if kept till he could be sold on execution.

That defendant then told said Guild to proceed and sell the ox on the writ, and referred Guild to the statute regulating the proceedings upon such sales.

That the plaintiff, Hyde, had gone to Massachusetts, previous to said attachment, and did not return till June after; but that his family remained at their usual residence during all this period. That said Guild left a notice at the house of the plaintiff, with the family of plaintiff, that application had been made to sell said ox on the writ, and this was the only notice given of such application.

That after giving this notice Guild applied to defendant, Cooper, to ascertain whether such notice was sufficient; and that defendant said he thought it was, and directed Guild to go and sell the ox; that thereupon, Guild advertised and sold the ox at public

XXVI          36

auction, and paid over the proceeds of the sale, it being the sum of $1,50, to the defendant.

The plaintiff also offered testimony tending to prove, that after the sale of the said ox, a brother of the plaintiff made some inquiry of Guild relative to said sale, the price for which the ox was sold, the number of persons present at the sale, and found fault with Guild for selling the same when no more persons were present to bid; and that defendant, Cooper, was present at the time, and said the officer had done just right.

It also appeared, that the defendant knew that plaintiff was absent from the state, and of the manner of the notice at the time of the sale, and when he received the money, the avails of the said sale.

The defendant then offered in evidence the writ in his favor against the plaintiff, on which the said ox was attached, and the officers return of the attachment and sale of the ox thereon, the record of judgment thereon, and also the execution issued on said judgment.

The defendant also offered testimony tending to prove, that at the time Guild, the officer, applied to him, after having left said notice at the house of the plaintiff, to know whether such notice was sufficient, that defendant told said Guild, that he should give no direction whatever about it, that he must proceed according to law; and that after being pressed by Guild for his opinion, defendant said, his opinion was that the notice was good; and that he gave no directions and assumed no control over the proceedings of the sale, except to make the application to the officer to sell.

The court charged the jury, that the notice left at plaintiff's house by Guild was not a sufficient notice to the plaintiff under the statute, and that if the defendant directed Guild to sell under such a notice, and directed or controlled the proceedings, he would be liable to the plaintiff.

Judge POLAND also charged the jury, that if the defendant gave no direction, in relation to the proceedings, in the sale of the ox, and assumed no control over them, except to give his opinion to the officer that the notice was good, he will not be liable in this action for any irregularity in the proceedings of the officer; and there was no such evidence of any adoption or ratification of the proceedings of the officer by the defendant as would make him

liable in the action, provided he had done nothing to make him liable previous.

The jury returned a verdict for the defendant.

The defendant excepted to so much of the charge as related to the sufficiency of the notice; but subsequently waived the exception.

The plaintiff excepted to the remainder of the charge of the court herein set forth.

*J. H. Prentiss* for plaintiff.

A subsequent assent, or adoption, or ratification, by one, of a trespass committed with a view to his benefit, makes him a trespasser, though the act was not done at his request, or by his command, and though it be for the abuse of an authority in law. 1 Swift's Digest 531. 2 Starkie Ev. 809. 1 Chit. Pl. 180–1.

This assent, or adoption, may be other than by express words of affirmance; it may be inferred from the acts of the person to be affected. 1 Amer. Lead. Cas. 572; or by an acceptance, or retainer, or demand by him, of the consideration of the act, or a benefit under it—*vide* 1 Amer. Lead. Cases 573, and cases there cited; and the ratification of a part of a transaction by claiming or accepting a benefit under it is a ratification of the whole. *Newell* v. *Hurlbert*, 2 Vt. 351. *Whitwell et al.* v. *Warner et al.*, 20 Vt. 425. *Bryant* v. *Moor*, 26 Maine 84–87, cited in 1 Amer. Lead. Cas. 574.

Assent may also be presumed from acquiescence after notice, and if the principal is informed by the agent of what has been done, the principal must express his dissatisfaction in a reasonable time else his adoption of the act will be presumed. 1 Amer. Lead. Cas. 573. *Cairnes* v. *Bleecker*, 12 Johns. 300.

In the present case, after the notice had been left at the plaintiff's house, the defendant was informed by his officer, Guild, of the manner of the notice, and was asked if the notice was sufficient, and replied, that he thought it was. The defendant was the creditor, a practicing lawyer, whose learning he would deem it an insult to dispute, and to him Guild resorted for instruction and orders.

After the sale, with a knowledge in the defendant of all that Guild had done, and the manner of his doing it, and that knowl-

edge communicated by Guild himself, the defendant said to him that he had done just right. Was this an expression of dissatisfaction? Was it not a direct approval? And was it not so much so at least, that it should have been left to the jury to determine its import?

At a later period the defendant accepts from the hands of Guild the money realized on the sale of the ox, knowing all the circumstances under which it is derived, and without dissent or disavowal of any sort applies it on his judgment against the plaintiff.

If " actions speak louder than words," this was more than equivalent to saying, " Well done, good and faithful servant."

*Cooper & Bartlett* for defendant.

The jury, in this case, found that the defendant did not control the process in the officer's hands in any way before the sale of the ox, and the only question to be considered is, whether his subsequent acts were sufficient to ratify and confirm the trespass committed by the officer, so as to make defendant liable for said trespass.

If a trespass was committed by the sheriff, it was done while he was proceeding, as he supposed, legally under color of process to collect defendant's debt. The defendant did not control him, or in any way ratify, confirm, or even assent to a trespass after it had been committed. The money paid to defendant by the sheriff, he received, " as having been legally collected to apply on his debt."

What defendant said, to the officer in the presence of plaintiff's brother, could not amount to a ratification of any wrong done by the sheriff. The officer had told plaintiff's brother and the defendant the number present at the sale of the ox, and what said ox sold for, and the plaintiff's brother thought the officer ought not to have sold the ox when no more were present to bid; and the defendant saying, " that the officer did right," if it amounted to a ratification of any thing could certainly ratify nothing that was not embraced in the said conversation, and the plaintiff does not claim but what the sale was legal, if the notice was sufficient.

The notice was not mentioned in the said conversation, and nothing was there said by the defendant, which could in any way relate to it.

If receiving money collected, by an officer, for him, or if by

Hyde *v.* Cooper.

telling an officer, he has done right when he pays him money, a man makes himself liable for the wrong acts of the officer while proceeding with his precept, he would never be safe in taking money from an officer, or in making the slightest remark to him, lest he should make himself liable for his misconduct. The charge of the court, in this case, was clearly correct.

The opinion of the court was delivered by

REDFIELD, Ch. J. The only question reserved by plaintiff's exceptions, (defendant's being waived,) is whether the decision of the court, in regard to defendant's conduct making him a trespasser *ab initio*, was correct. According to the recent English cases, upon this subject, to implicate one, as a trespasser *ab initio*, he must do, or consent to some act, which goes to show, that the original taking was with the purpose of putting the thing to an illegal use. These decisions go upon the avowed ground of narrowing, to the utmost, the extension of this doctrine, of making officers, and others, trespassers by means of some technical irregularity, in the detail of their duties. The professed object is a commendable one no doubt, and has been to a considerable extent adopted, by this court, in a late case in Grand Isle Co., *Stoughton* v. *Mott,* 25 Vt. 668.

Applying that rule to the present case, it would not be easy to make even the officer a trespasser *ab initio*. It is in fact somewhat questionable, I think, whether there was any fatal irregularity in the sale. But as the exceptions are waived, on the part of the defendant, the plaintiff is probably fairly entitled to have it here considered, that the officer's notice was insufficient, and the sale being the same, as if made without any notice, might probably come even within the English rule of making the officer a trespasser.

But the jury having found that the defendant did not control the officer, he cannot be implicated, in the original wrong. And the expressing of an opinion under protest, as in the present case, it has often been held will not preclude the party, from recovering damages of the sheriff, for the very act, which it would, if he were thereby to be considered, as consenting to the act.

The only remaining question is in regard to defendant's subsequent ratification of the act. What defendant said in regard to

the officer having done right, was said, when the party was object-
ing, to the sale being made, when but few bidders were present,
and could not fairly be referred to the notice given. And defend-
ant receiving the money has never been held, to imply any consent
to any irregularity in the proceedings of the officer, even if known
to the party, especially when such irregularity consisted, in some
technicality, of which the party is supposed ordinarily not compe-
tent to judge. And in the present case the defendant is to be
viewed like any other party, not subject to any severer rule of
judgment, on account of his supposed knowledge of the law, inas-
much as he disclaimed any purpose of assuming the responsibility
of controlling the officer. His receiving the money would not
seem to imply any assent to the officer's proceeding beyond what
had transpired before the sale.

No doubt, if the officer takes the property of one man, upon
another's debt, or sells, at private sale, and the creditor accepts the
money, knowing the facts, he may be liable for the acts of the
officer. But in such case the acts are not regarded, as official.
But it would scarcely be consistent, with sound reason, to apply the
same rule to all the acts of an officer. It would be almost equiv-
alent to exonerating the officer, from all official responsibility.

The views here expressed are strongly confirmed, by the decis-
ion in the case of *Abbott* v. *Kimball,* 19 Vt. 551. As a general
rule perhaps, where the mistake is one of fact, and such as makes
the officer a trespasser, and the party knowing all the facts, consents
to take the avails of a sale, or where he counsels the very act,
which creates the liability of the officer, he is implicated, to the
same extent, as the officer. But when the party does not direct,
or control the course of the officer, but requires him to proceed, at
his peril, and the officer makes a mistake of law in judging of his
official duty, whereby he becomes a trespasser even, by relation,
the party is not affected by it, even when he receives money, which
is the result of such irregularity, although he was aware of the
course pursued by the officer. He is not liable, unless he consents
to the officer's course, or subsequently adopts it. And if he does
that, he cannot maintain an action against the officer, for doing the
act, and the consequence would be, that if receiving the avails of
a sale on execution were to be regarded, in all cases, as amount-
ing to a ratification of the conduct of the officer, in the sale, it

must preclude the creditor from all suit, against the officer, on that account, which has never been so regarded. The party may always take money, which the officer informs him he has legally collected without assuming the responsibility of indorsing the perfect legality of the entire detail of the officer's official conduct, in the matter.

For if the officer is compelled to refund to the debtor, on account of his irregularity of procedure, that will not affect the right of the creditor to retain the money. He is still entitled to retain the money, against the officer. And the party cannot claim the money of the creditor, without thereby affirming the sale. So that the creditor's accepting the amount of money, for which the property sold, is no more a ratification of the conduct of the officer, than if he took the money of the officer, on any other liability. The money is the officers, whether he was a trespasser or not, and he is at all events liable to the creditor. If the sale was irregular, that is his loss, he must still pay the creditor, and accepting the money is but taking pay for the officer's liability to the creditor, for his default in the sale, if it was irregular. So that in any view of the case, there is no ground of implicating the defendant.

Judgment affirmed.