Hon. PIERPOINT ISHAM, }
Hon. MILO L. BENNETT, } ASSISTANT JUDGES.

---

SAMUEL NUTT *v.* MINOT WHEELER.

*Trover. Officer. Intoxicating Liquor.*

An officer or authorized person, who has regularly attached personal property in a suit against the owner, will not be liable to the latter in trover for a mere neglect to take proper care of the property while under attachment, neither will such neglect render him a trespasser *ab initio.* The proper remedy for such negligence is a special action on the case.

A cask of gin was attached by the defendant, as an authorized person, upon a writ against the plaintiff, and the suit finally resulted in a nonsuit, whereupon the plaintiff demanded the gin of the defendant, from whose house, however, in his absence it had been previously taken and sold by another person, who claimed to own it. When so sold it contained seven gallons less of liquor than when attached by the defendant, which the case showed had been taken out by some one, or had evaporated or leaked out. *Held,* in an action of trover for the gin, that these facts constituted no evidence of *conversion* by the defendant.

If one have intoxicating liquor in his possession, claiming to hold it for a lawful purpose, it is subject to attachment upon his debts, like other property, and may be sold for a lawful purpose upon an execution against him, and an officer who has attached it in a suit against the owner, is not precluded, by the fact of its being intoxicating liquor, from justifying such attachment in an action of trover brought by the owner against him.

TROVER for a cask of gin. Plea, the general issue, and trial by the court, at the December Term, 1856,—UNDERWOOD, J., presiding.

It appeared, on trial, that prior to the 1st of October, 1854, one Ostheim, a liquor dealer in the city of New York, was at the "Junction- House," a hotel kept by the plaintiff at White River Junction, in this state, and solicited the plaintiff to let him send him a cask of gin, to which the plaintiff replied that he did not want so much, and could not pay for so much; whereupon Ostheim told him he would send him the gin and that he need not pay for it until he had used it up, to which proposition the plaintiff assented. Shortly afterwards, he received from Ostheim the cask of gin in question, with a bill of the price, amounting to fifty-three dollars and fifty cents. The plaintiff placed the gin in his store-room, where it remained unopened until it was attached by the defendant as hereinafter stated. In January following, a justice suit was brought in favor of Ostheim against the plaintiff, to recover the price of the gin, and the defendant was duly authorized to serve the writ, and did serve it, by attaching the cask of gin above described. The defendant testified that when he made the attachment, the plaintiff said he had not bought the gin, but that it had been sent to him by Ostheim, and that he should let Ostheim have it again when he was next at that place, if he would pay the freight on it. But the plaintiff testified that he told the defendant when he attached the gin that he had bought it, but that he was not to pay for it until

he had used it, and that he did not buy it to furnish to his guests in the hotel, but for his own use and that of his family. The plaintiff also testified that he did not purchase it with any intention of putting it to an illegal use.

The defendant took the gin under the attachment and deposited it in his own house for safe keeping, and made a due return of the attachment. The suit in favor of Ostheim was continued from time to time till the 12th of March, 1855, a few days previous to which time Ostheim's counsel entered a nonsuit in the case, and notified the plaintiff, Nutt, thereof.

The plaintiff demanded the gin of the defendant on the 19th of March, 1855, but previous to that time it had been taken from the latter's house, in his absence, by Ostheim's agent, and sold by him to the authorized agent of the town of Bethel, for selling liquor under the statute. When the defendant attached the cask it contained forty-two gallons of gin, but when it was sold to the town agent of Bethel it contained but thirty-five gollons, seven gallons having been taken out by some one, or having evaporated or leaked out.

It also appeared that the plaintiff had no license or authority under the law to sell, furnish or give away intoxicating liquor. Upon these facts the court inferred that the plaintiff, with Ostheim's knowledge of his purpose, bought the gin to use as a beverage, and mainly to furnish to his guests, and rendered judgment for the defendant. Exceptions by the plaintiff.

*Washburn & Marsh*, for the plaintiff.

*A. P. Hunton*, for the defendant.

The opinion of the court was delivered by

BENNETT, J. It is assumed by the plaintiff's counsel, in this case, that this cask of gin was the property of the plaintiff, that it was not purchased by him in contravention of the statute law of this state, and that upon the face of the bill of exceptions there was no evidence tending to justify the finding of the court below, that the plaintiff bought this liquor *mainly to furnish to his guests in violation of the statute.* If we admit all this assumption to be

well founded, it necessarily raises the question, whether upon that assumption this action can be sustained against this defendant. We find that the defendant on the 15th of January, 1855, attached this cask of gin on a writ against the present plaintiff, and in favor of Ostheim, of New York, which he was duly authorized to serve, that under the process the liquor was taken by this special officer and deposited in his own cellar, and the writ was duly returned to the magistrate, and the cause continued from time to time until the 12th day of March, 1855, when the plaintiff became nonsuited.

It is clear that this defendant was guilty of no wrong in attaching and carrying away this liquor, and that this action can not be maintained for the taking, unless he became a trespasser *ab initio.* A lawful taking is no conversion. There is nothing in the case subsequent to the taking, that can make the defendant a trespasser *from the beginning.* If he was guilty of negligence in taking care of this liquor, so as to preserve it for the plaintiff, upon the dissolution of the attachment, it was a *non-feasance,* as was held in the case of *Abbott* v. *Kimball,* 19 Vt. 558, for which trover will not lie, as was there held. The remedy would be in case for the negligence. It appears it is true that the plaintiff made a demand upon the defendant for a return of the gin after Ostheim had entered his nonsuit, but before that, Ostheim, by his agents, had, in the absence of the defendant from home, taken the liquor away from his cellar and sold it. The failure of the defendant, under such circumstances, to deliver the gin to the plaintiff, was no evidence of *conversion.*

As to the seven gallons that was found missing, when the agents of Ostheim sold the gin to the town agent, the case finds "it had been taken out by *some one, or had evaporated or leaked out.*" This, to be sure, may be thought to be a misfortune, and if it happened for want of care in the defendent, he would be liable in case for the negligence, but to charge him in trover for it there must be something more than a *non-feasance,* and this must have been found by the exceptions.

We can not presume it for the sake of reversing a judgment of the county court. But it was said in the argument that this liquor was not subject to attachment, and that therefore the defendant can not justify the taking under his process.

But why not?   It is assumed by the plaintiff's counsel that it is *property*, and held by the plaintiff for a lawful purpose, and if so, it should be protected in his hands, and subjected to his debts, in common with his other property.   It could be sold on the execution for *a lawful purpose*, and we can hardly presume, in the absence of proof, an *intent* to sell it for an *unlawful purpose*, and thereby contaminate the attachment.

In this view of the case, the judgment was right below, and it is of no importance to consider any other questions arising on the bill of exceptions.   Judgment affirmed, with costs.