# ORLEANS COUNTY,

JOHN TINKER, *Appellant, v.* JACOB MORRILL AND A. B. NELSON.

*Trover. Conversion. Receiptor.*

Trover cannot be sustained by an attaching officer against the receiptors of the attached property, where the property becomes materially damaged or lessened in value through their negligence merely, such negligence not being regarded as equivalent to a conversion.

In the sense of the law of trover, a conversion consists either in the appropriation of the property to the party's own use and beneficial enjoyment, or in its destruction, or in exercising dominion over it in exclusion or defiance of the plaintiff's right, or in withholding the possession from the plaintiff under a claim of title inconsistent with his own.

THIS was an action of trover for a wagon and harness with counts in case. Plea, general issue, with a tender of amends. Trial by jury at the June Term, 1865, POLAND, Ch. J., presiding.

The wagon and harness sued for, together with a horse, were attached by the plaintiff, who was then sheriff of Orleans county, on the 8th day of June, 1858, on a writ in favor of George R. Holmes against William Hull, of Stanstead, Canada. On the 17th day of June, 1858, the defendants, Morrill and Nelson, signed a receipt for said property in the usual form of an officer's receipt. The property was then at the hotel at Derby Line, and was delivered by the plaintiff to the defendant Morrill. Morrill took the horse away but left the wagon standing under the hotel shed, and the harness hanging up in the hotel barn, under the care and oversight of

no one. The wagon remained under the hotel shed, except when the shed was wanted for other uses, and then it was run out into the yard until fall, when it was placed in an open yard behind the shed where it remained until the next spring or summer.

The plaintiff's evidence tended to show that during this time the wagon was used by a great number of persons as they chose without asking leave of any one, and that by reason of such use, and by exposure to the weather, it was greatly damaged and lessened in value, and the manner in which such wagon was kept and used was not contradicted; but the defendants' evidence tended to show that it was not so much injured and reduced in value as the plaintiff claimed. On the night of the 4th of July, 1859, the wagon was taken by some rowdies, and run off the lower side of the abutment of a bridge and damaged to some extent. The defendant, Morrill, was informed of the condition of the wagon, and thereupon took it home to his place in Stanstead and placed it under a barn which had an open space or shed under it. In October, 1859, the barn was blown down by a heavy wind and the wagon broken to pieces so that the only parts of it that were left sound were two wheels.

The suit in favor of *Holmes* v. *Hull*, on which said property was attached, was ended in the supreme court for Orleans county, August Term, 1860, by a judgment in favor of the plaintiff for $160.33 damages, and $64.51 costs, and execution was issued in due season and delivered to the plaintiff for collection. On the 17th of September, 1860, the plaintiff demanded said wagon and harness of the defendants. The defendant, Morrill, thereupon produced the two wheels and other fragments of the wagon and offered them to the plaintiff, who declined to receive them. The harness was not returned, nor was there any evidence as to what became of it, or that it was ever seen after it was left by the defendant, Morrill, in the hotel barn, as before stated.

The only exception taken to the charge was the following: The court charged the jury that if they found that the wagon, previous to the time it was taken home by the defendant Morrill, was not taken care of with common prudence, and that by reason of such want of care it had become materially damaged and lessened in value the

plaintiff was not bound to accept it when offered to the plaintiff on demand made for it, though they might find that the subsequent destruction of the wagon by the fall of the barn was without the fault of the defendant, and that then the plaintiff would be entitled to a verdict for the value of the wagon and harness expressed in the receipt more than that sum being still due on the Holmes execution against Hull. To this part of the charge the defendants excepted, in all other respects no exception was taken.

The jury gave a verdict for the plaintiff.

*B. H. Steele*, for the defendants.

*Edwards & Dickerman* and *T. P. Redfield*, for the plaintiff.

Argued at August Term, 1865, before PIERPOINT, KELLOGG and PECK, JJ. At the present term the opinion of the court was delivered by

KELLOGG, J. The instructions to the jury which were excepted to by the defendants present the question whether a count in trover can be sustained by an attaching officer against the receiptors of the attached property, if the property becomes materially damaged or lessened in value through their negligence merely. It has long been the settled law of this state that, if an an officer attaches property, and bails it to a receiptor who refuses to deliver it on request, trover may be sustained against the receiptor. *Sibley* v. *Story*, 8 Vt. 15 ; *Pettes* v. *Marsh*, 15 Vt. 454 ; *Brown* v. *Glead et al..* 33 Vt. 147. The receiptor is treated as only the temporary bailee of the property, with the right to use it by the consent of the debtor, but liable at any time to be called to account if guilty of converting the property by any abuse, or wrongful use, or refusal to deliver on demand. But in order to maintain trover, it is necessary to prove not only that the plaintiff had a general or special property in the goods, and a right of possession, at the time when the cause of action arises, but also that there was an injurious conversion of the goods by the defendant to his own use. It is a familiar principle that, where the goods came into the defendant's possession by delivery or finding, the plain-

Tinker *v.* Morrill et al.

tiff must demand them, and the defendant refuse to deliver them up, in order to constitute a conversion, but that such demand and refusal is only *evidence* of a conversion, and is not necessarily a conversion in itself. In the sense of the law of trover, a conversion consists either in the appropriation of the property to the party's own use and beneficial enjoyment, or in its destruction, or in exercising dominion over it, in exclusion or defiance of the plaintiff's right, or in withholding the possession from the plaintiff under a claim of title inconsistent with his own. 2 Saund. Rep., (Patteson & Wm.'s edit.) 47 h.; 2 Greenl. Ev., § 642. Lord HOLT's general definition of a conversion in *Baldwin* v. *Cole*, 6 Mod. 212, is, that it is "the assuming upon one's self the property in and right of disposing of another's goods." A demand and refusal is only evidence of a conversion where the defendant was in such a condition that he might have delivered the property if he would. *Irish* v. *Cloyes & Morse*, 8. Vt. 32; *Rice* v. *Clark*, *ib.*, 109; *Knapp & Worden* v. *Winchester*, 11 Vt. 351; *Yale* v. *Saunders et al.*, 16 Vt. 243. The undertaking of the defendants as expressed in their receipt was to deliver the property to the plaintiff on demand, and, consequently, a demand of the property from the defendants was necessary to perfect any cause of action arising out of the bailment. Proof of a conversion of the property by the defendant being essential to the support of the action, the question is, whether this is supplied by proof that the property was materially damaged or lessened in value through the defendants' negligence or nonfeasance merely.

In 2 Greenl. Ev., § 642, it is said that the averment of a conversion in the action of trover is not supported by evidence of nonfeasance alone; and this seems always to have been a recognized principle in the law of the action of trover. In *Mulgrave* v. *Ogden*, Cro. Eliz. 219, it was held that trover would not lie for negligent keeping any thing, but that if the thing be *used* or *abused*, it is a conversion. In *Owen* v. *Lewyn*, 1 Vent. 223, Lord HALE said that "if a carrier loseth goods committed to him, a general action of trover doth not lie against him." In *Anon.* 2 Salk. 655, it was held by TREVOR, Ch. J., that "trover lies not against a carrier for negligence, as for losing a box, but it does for an actual wrong, as if he break it to

take out goods, or sell it ; and therefore denial is no evidence of a conversion if the thing appears to have been really lost. by negligence, but if that does not appear, or if the carrier had it in custody when he denied to deliver it, it is good evidence of a conversion." In *Ross* v. *Johnson et al.*, 5 Burr. 2825, it was held that *case*, and not *trover*, would lie against a wharfinger or common carrier for goods stolen or lost, and that a bare omission of the defendants to deliver the goods when demanded could not be considered a refusal to deliver them, as the goods, having been lost, were not in the power of the defendants to deliver up on the demand. In *Bromley* v. *Coxwell*, 2 B. & P.. 438, it is said by HEATH, J., that it was agreed that mere negligence is not sufficient to amount to a conversion,—that the conduct of the defendant was a mere nonfeasance,—and that, to support an action of trover, there must be a positive, tortious *act*. In *McCrombie* v. *Davies*, 6 East, 538, Lord ELLENBOROUGH, Ch. J., said that " the mere not ·doing of an act is not a conversion." In *Williams* v. *Gesse*, 3 Bingh. N. C., 849, ( 32 E. C. L. R., 389, ) it was held that an innkeeper is not liable in trover for the loss of articles deposited in his house for the purpose of being forwarded by a carrier, negligence not being such evidence of conversion as would support the action. In *Hawkins* v. *Hoffman*, 6 Hill, 586, it was held that trover may be maintained against a common carrier where the goods entrusted to him are lost by his *act*, though without any wrongful intent, as when he delivers them to the wrong person by mistake or under a forged order ; but that if the goods are lost through the mere *omission* of the carrier, trover will not lie, even after demand and refusal, and that, in such a case, the owner should bring either assumpsit or a special action on the case. In *Bowlin* v. *Nye*, 10 Cush. 416, it was held that trover would not lie against a carrier for goods lost by nonfeasance merely ; and METCALF, J., in delivering the opinion of the court, said that conversion, when applied to the action of trover, imports an unlawful *act*, and not a mere nonfeasance, and that if the nonfeasance of the defendant was the cause of the loss of the goods, the plaintiff's remedy, when the action was commenced, was a special action upon the case, either *ex contractu* or *ex delicto*. The same principle has also been recognized in this

court. In *Abbott* v. *Kimball et al.*, 19 Vt. 551, it was held that where property has been attached, and final judgment is rendered in favor of the defendant in the suit in which the attachment was made, trover would not lie against the attaching officer for neglect in not keeping and taking suitable care of the property attached,—such neglect being a mere nonfeasance. In *Nutt* v. *Wheeler*, 30 Vt. 436, the same principle was reaffirmed, and it was said by Bennett, J., that " the remedy would be in case for the negligence."

The instructions to the jury in the particulars excepted to, proceeded upon the ground that if the wagon, by the defendants' negligence in taking care of it, became materially damaged and lessened in value, this negligence, although a mere nonfeasance, should be treated as equivalent to a conversion of the wagon by them. When the attached property was demanded of the defendants, there was no refusal by them to return it to the plaintiff, but, on the contrary, they offered to deliver to the plaintiff all that was left of the wagon after it had been broken into pieces by the fall of the barn, and the plaintiff refused to receive the remains of the wagon which were so offered to him. The mere negligence of the defendants in respect to the keeping of the wagon with proper care, was no repudiation of the plaintiff's right to it, nor was it any assertion or exercise of any dominion over it inconsistent with the plaintiff's right. If the plaintiff was injured or sustained damage by reason of the defendants' negligence in the care of the wagon, he could on a proper count in case, recover the full measure of his damages, but, under the instructions given to the jury, they were not at liberty, if they found the alleged negligence of the defendants proved, to return a verdict in favor of the plaintiff for a less sum than the whole value of the wagon as estimated in the receipt, even though the actual damage to it occasioned by such negligence, might not have been more than one-half, or even one-quarter, of that value. In an action on the case, the measure of damages is the actual injury sustained, as a general rule ; but this rule is not applicable to the action of trover, in which, if a conversion is proved, the plaintiff is entitled to recover the whole value of the property at the time of the conversion,— it being a settled principle that, if a conversion once takes

place, it cannot be cured. We regard the instructions to the jury as being erroneous,·so far as they required the jury to treat the negligence or mere nonfeasance of the defendants in respect to the care of the wagon as equivalent to a conversion, if the wagon was thereby materially damaged or lessened in value ; and, on this ground, there must be a new trial. No question arises on the bill of exceptions in respect to the harness or the tender of amends.

Judgment of the county court for the plaintiff reversed, and a new trial granted.