FRANK S. TUCKER *vs.* WILLIAM H. JERRIS.

Cumberland. Opinion May 23, 1883.

*Torts. Adoption of same. Exemplary damages.*

To hold one responsible for a tort not committed by himself, nor by his orders, his adoption of, and assent to the same must be clear and explicit and made with a full knowledge of the tort, or at least of the injured party's claim that there has been one.

Where there is no evidence sufficient to connect the defendant with a tort if there has been one, it is erroneous and misleading to tell the jury that they have the power to award exemplary damages.

ON EXCEPTIONS and motion from superior court.

An action of the case to recover damages for an alleged false arrest. The writ was dated August 19, 1881. The plea was the general issue. The verdict was for the plaintiff in the sum of one hundred and twenty-five dollars.

At the trial the presiding judge in his charge, after giving the general rule of damages, continued:

"The plaintiff claims in addition to this to recover punitive damages. . . . They are damages awarded in cases where the evidence discloses an utter and wanton disregard of the rights of another party. They also rest in the sound discretion of the jury. They are not obliged to award exemplary damages and such damages should only be awarded where the testimony discloses an utter and wanton disregard of the rights of the plaintiff. If you come to the question of damages, you can award in this case such exemplary damages as seems to you proper and just, under the circumstances of the case, if at all."

The opinion states the other material facts.

*A. F. Moulton*, for the plaintiff.

It cannot be claimed for Jerris that he did not know all the facts upon which Chase based his belief. It is no excuse that he was wilfully and wantonly ignorant. 14 Central Law J. 64; *Merriam* v. *Mitchell*, 13 Maine, 456; *Bailey* v. *Carville*, 62 Maine, 525; *Morton* v. *Young*, 55 Maine, 29.

The rule is well settled that punitive damages may be allowed for wilful injuries to the person. *Wadsworth* v. *Treat*, 43 Maine, 163; 2 Greenl. Ev. § 253; 1 Kent's Com. *630; Sedgwick, Dam. *39.

In this case, however, although punitive damages might and should have been allowed, the amount of the verdict is not sufficient to be called punitive.

Tucker actually lost about twenty-five dollars, in loss of time expenses for counsel fees, &c. He was entitled to recover for his bodily and mental sufferings, five days in jail, and for the disgrace and ignominy of such an arrest and the injury to his reputation. Field on Dam. 538; 2 Greenl. Ev. § 267. For all this, the verdict rendered could not have been more than suffi-

cient, hence no punitive damages could have been allowed, and the defendant could not have been aggrieved.

*T. H. Haskell*, for the defendant, cited: *Coombs* v. *Scott*, 12 Allen, 497; *Forsyth* v. *Day*, 41 Maine, 395.

BARROWS, J.    The facts bearing upon the maintenance of the action established by the testimony in this case may be briefly stated as follows: The plaintiff was arrested upon a writ sued out in the name of the defendant as plaintiff by one Chase, who subscribed the requisite oath to cause the plaintiff's arrest, as agent for this defendant.    The suit was for the price of a hack which once belonged to defendant and was left at the shop of Chase, who was a carriage-maker. · Chase called on defendant to know what he would take for it, and defendant named the price for which he would sell it to him.    Shortly after, Chase, without other permission from defendant to sell, sold the hack with some harnesses that belonged to himself, to the plaintiff, receiving of him $25 in part payment.    Chase told defendant that he had sold the hack to a responsible party, and paid him a small part of the cash received.    But defendant never ratified the sale to plaintiff as made on his behalf, and before the commencement of the suit in which plaintiff was arrested, he told Chase that he should look to *him* for the pay for the hack.    Chase went to an attorney to commence an action in his own name against the plaintiff but gave the attorney such a version of the transaction that he advised that it should be commenced in the name of this defendant, Jerris, the original owner, which was accordingly done.    There is no evidence that the defendant ever employed an attorney or authorized Chase to employ one on his account, but the contrary. The defendant, and Chase, and the attorney, (all who knew anything about it) thus testify in the most distinct and positive terms. Chase's statement on cross-examination that he styled himself in the affidavit agent for Jerris and that it was true, taken in connection with what he instantly adds — that he went to see counsel with the intention of suing the man "*on his own responsibility*," and the explanation which follows, fairly interpreted, simply means that he acted as Jerris's agent on that occasion, and, under advice of counsel, considered he had a right so to do.

There is no evidence that defendant ever did anything touching the prosecution of that action or knew that it had been commenced in his name until after the arrest; but plaintiff is obliged to rely upon a ratification by the defendant of Chase's acts as his agent in this wise: — Some question arose about the correctness and sufficiency of the bond tendered by the plaintiff to procure his release from arrest, whereupon the attorney who commenced the action, went to the office of this defendant who was the nominal plaintiff in that suit to get his approval of the sureties. There seems to have been no conversation except about the sufficiency of the sureties; and the attorney testifies that he has no recollection that then or at any other time the defendant disclaimed any responsibility, or the authority of the attorney to appear in the action. On the other hand it would seem that from the high character and standing of the attorney, the defendant took it for granted that all was right and did not regard the matter as of interest to himself. But the only evidence which connects the defendant with the transaction is this *quasi* recognition of the propriety of proceeding in his name after the arrest had been made. The evidence is conflicting as to the reason which Chase had to believe that the plaintiff who has no family ties, was going to reside beyond the limits of the State. But it is worthy of note that the plaintiff himself admits that he told Chase that he had an offer to go to the Provinces; and while the verdict could not be set aside on this point, it is manifest that the plaintiff's case was not a strong one on that branch of it.

But if the jury believed the plaintiff's testimony in all respects, and that Chase committed a wrong in causing his arrest, there was still a lack of proof to charge the defendant Jerris with that wrong, or for Chase's acts in the premises on the ground either of authority or ratification.

Of original authority even to commence a suit in the name or for the benefit of Jerris there was no evidence whatever — of ratification, none but the failure to direct its discontinuance as soon as it came to his knowledge that it had been commenced in his name when Chase's attorney presented the bond for his approval. The

question is whether that omission imposes upon the defendant a liability for Chase's tort, if he committed one.

To bind one to the performance of a contract which another without authority has assumed to make for him, the ratification must be made with a full knowledge of all material facts.

" Ignorance or misapprehension of any of the essential circumstances relating to the particular transaction alleged to have been ratified will absolve the principal from all liability by reason of any supposed adoption of or assent to the previously unauthorized acts of an agent." *Coombs* v. *Scott*, 12 Allen, 493. And this is so even though the ignorance or misapprehension arises from the negligence and omission of the defendant to make any inquiry relative to the subject-matter. *Ibid.* To hold one responsible for a tort not committed by his orders, his adoption of and assent to the same must at all events be clear and explicit, and founded on a clear knowledge of the tort which has been committed. *Adams* v. *Freeman*, 9 Johns. 117; *West* v. *Shockley*, 4 Harring. 287; *Kreger* v. *Osborn*, 7 Blackf. 74; *Abbot* v. *Kimall*, 19 Vt. 551.

And this rule is not affected by the fact that the defendant has received the money coming by means of the tort from his servant. *Hyde* v. *Cooper*, 26 Vt. 552. The suit in this case was commenced in the defendant's name according to all the testimony by Chase for his own benefit, and under the mistaken idea that he had a right to use defendant's name in the process, and there is nothing from which it can be inferred that the defendant had any knowledge that Chase had committed any wrong in making the affidavit to procure the arrest, even if we regard the verdict of the jury as conclusive that he actually did. There is no evidence that at the time of the alleged ratification defendant knew even that plaintiff claimed that any wrong had been done. To hold the defendant responsible for such wrong, if there was one, upon the evidence here presented, the jury must have been governed by some unaccountable bias or prejudice. They probably accepted the assertions of counsel in lieu of testimony, and their verdict is clearly against law and evidence and without evidence to support it. It cannot stand. The instruction excepted to was liable to be understood by the jury as placing the burden of

proof upon the defendant to show that Chase had reason to believe that the plaintiff was about to leave the state, &c. ; whereas it was incumbent upon the plaintiff who alleges it to prove that the affidavit was made either in bad faith or without sufficient grounds and so was not warranted by existing facts.

Since the testimony did not justify a verdict against the defendant in any event the suggestion that the jury was at liberty to give exemplary damages also was erroneous and misleading.

*Motion and exceptions sustained.*
*New trial granted.*

APPLETON, C. J., DANFORTH, VIRGIN, PETERS and SYMONDS, JJ., concurred.