## ISAAC C. BROWN *v.* THOMAS GLEED AND OTHERS.

### *Officer's Receipt. Trover. Evidence.*

The plaintiff having, as sheriff, attached certain goods, the defendants, as attorneys for subsequent attaching creditors and for the debtors, being desirous of having the goods sold at private sale instead of at auction, agreed with the creditor upon whose suits the goods were attached, that they should execute to the plaintiff a receipt for the goods at a certain valuation, and should thereupon receive the goods and dispose of them as they desired. Accordingly the defendants executed and delivered to the plaintiff a writing acknowedging the receipt of the goods from him, and agreeing to keep them free of expense, and return them to him on demand, or pay the stipulated

value; and they thereupon received the goods and disposed of them at private sale. *Held,* that this receipt was equivalent to the ordinary receipt given to officers for property attached by them; that it was a contract, and not a mere receipt; that trover could be maintained against the defendants for failure to return the goods on demand, and to pay the stipulated price; and that parol evidence was not admissible to show that at the time the receipt was given the parties agreed that the defendants might sell the goods.

TROVER for a quantity of goods. Plea not guilty, and trial by the court at the March Term, 1858,—BARRETT, J., presiding.

The plaintiff gave in evidence a receipt executed and delivered to the plaintiff by the defendants, in the following words : " Received of Isaac C. Brown, deputy sheriff, the following property, (describing the goods in question) which we agree to keep free of expense to said Brown, and return on demand, or pay two thousand dollars."

It was conceded by the defendants that the property named in this receipt had been duly attached by the plaintiff as a deputy sheriff on sundry writs ; that this receipt was executed and delivered by the defendants to the plaintiff as such deputy in virtue of his then having such property in his possession under such attachments ; that thereupon the property was delivered by the plaintiff to the defendants, who, though the plaintiff had demanded it of them previous to the commencement of this action, had not returned any of it to him, nor paid him the sum of two thousand dollars, except eleven hundred and twenty-four dollars and seventy-five cents ; that the defendants had sold and disposed of the property, and received therefor about twenty-three hundred dollars ; that judgments had been duly rendered for the plaintiffs in the suits on which such attachment was made, and executions duly issued thereon and placed in the plaintiff's hands for collection in season to charge the property attached.

The defendants proved by parol, subject to all legal objections to the admissibility of such evidence, that after the attachment in question, a portion of the goods attached were sold by the plaintiff at sheriff's sale on one of the executions in his hands ; that some of the other attaching creditors were dissatisfied with this mode of sale, and thought that a larger sum could be realized for the goods if they were sold at retail by some person put into the store as agent for that purpose ; that therefore the defendants,

as attorneys of some of the attaching creditors and at the same time as general attorneys for the debtors, applied to the plaintiff to make some arrangement by which the goods might be so sold; that the plaintiff declined to take the responsibility of making any arrangement about the matter, but expressed a willingness to conform to whatever arrangement the creditors might make or authorize in that behalf; that thereupon the defendants called on Mr. Dillingham, attorney for the other and prior attaching creditors, who then arranged and agreed that if the defendants would give to the plaintiff, as such deputy sheriff, a receipt for the attached property, fixing the value at two thousand dollars, he in behalf of the creditors whom he represented, would consent to the plaintiff's taking such receipt and delivering to them the property, to be disposed of in the manner desired by them; that thereupon the defendants did execute and deliver to the plaintiff the receipt in question, and the plaintiff then delivered the property to them, with the understanding that it was to be disposed of at private sale by an agent in the store where it was attached by the plaintiff; and that this understanding as to the mode of the sale of the goods was carried out.

It was agreed by the parties that if the plaintiff was entitled to recover, the damages should be nine hundred and thirty-six dollars and fifty-one cents.

On these facts the court rendered judgment for the plaintiff for nine hundred and thirty-six dollars and fifty-one cents damages and costs, to which the defendants excepted.

*Gleed & Hendee*, for the defendants.

*Dillingham & Durant*, for the plaintiff.

REDFIELD, Ch. J. The former arguments upon this case seem to have raised some question, whether it was the intention of the parties, in this case, to have the defendants remain responsible for the property attached, in the ordinary sense of the liability of receiptors. But on careful consideration of the facts in the case, it is obvious to a majority of the court:

1. That the contract entered into did impose just that responsibility and no other.

2. That this was the intention of all the parties concerned, at the time of executing the receipt.

I. That the contract entered into did impose the ordinary responsibilities of receiptors is beyond all question, unless the receipt is a mere recital of facts, and not a contract at all, but to be treated as evidence merely, but subject to be controlled, like other evidence, by other testimony of what passed at the time.

1. This, it seems to us, is at variance with the form of the receipt. It contains distinct stipulations, affecting the interest of both parties ; as that the value of the property, and the extent of the liability for it shall be two thousand dollars and no more. This it has often been decided is a conclusive stipulation, not liable to be affected by showing that the property was of greater or less value. And by parity of reasoning, not even by showing that the liability was, by mistake even, put too high, or too low, and should have been differently expressed. And this rule applies equally, whether the action be assumpsit or trover, as was expressly decided in *Parsons* v. *Strong*, 13 Vt. 235.

2. The receipt has always been treated as a contract, in that it is made conclusive evidence of the attachment of such property as is described in the receipt, and the receiptor cannot be allowed to prove the contrary, which certainly could not be the result, if the receipt were treated as evidence merely. *Spencer* v. *Williams*, 2 Vt. 209 ; *Lowry* v. *Cady*, 4 Vt. 504 ; *Allen* v. *Butler*, 9 Vt. 122. So too the receiptor cannot show, in defence of an action of trover, that no specific property was attached, but it was intended to be merely an indemnification, by way of contract. *Pettes* v. *Marsh*, 11 Vt. 452. This last case applies with great force to the facts urged in defence in the present case. In the case just cited, it was offered to be proved, that although the debtor gave his receipt, with surety, for three hundred and fifty sheep, the officer in fact never saw any sheep, and neither party had reference to any particular sheep, so that the transaction was evidently a mere contract and nothing more. But the proof was decided by this court incompetent evidence in defence of an action of trover, on the ground that the debtor had, by the terms of the " *contract* " waived the attachment of the particular

sheep, and having given the ordinary receipt must have expected to incur the ordinary liability.

3. The argument of the defendant attempts to make the contract in this case, by uniting the oral evidence with the receipt, equivalent to a conditional contract of sale, or bailment, with the power of sale. But it was very early decided by this court, that the officers' receipt in common form, which we understand was the one executed in this case, imposed upon the receiptor an absolute duty to restore the property on demand, and that the alternative only limited the extent of the recovery. *Catlin* v. *Lowry*, 1 D. Chip. 396 ; *Page* v. *Thrall*, 11 Vt. 230. In this latter case this is put upon the ground that the receipt is a " *contract*," and as the officer has no power to sell the property, except in the mode pointed out in the statute, it would obviously pervert the intention of the parties, to give the contract, evidenced by the receipt, any such construction. In the course of Mr. Justice BENNETT's argument in his opinion against this construction of the receipt, which would have no application if it were not a contract, he speaks of it as a " *contract*," in the course of half a page, no less than six times, and as an absolute promise to re-deliver the property, twice. The same view is taken of the subject in *Sibley* v. *Story*, 8 Vt. 15, where the very point as to the right of disposing of the property being one of the conditions of the contract, was made. It is scarcely possible to look into a decided case in this State upon the subject of receipts for property, where they are not constantly spoken of and treated as *contracts*, not liable to impeachment or contradiction. The ordinary officer's receipt is treated as a contract, and so in terms declared in *Fox* v. *Adams*, 17 Vt. 361. So it is also in *Maxfield* v. *Scott*, 17 Vt. 634. Indeed I can find no case where the ordinary officer's receipt has been treated as evidence merely and not a contract. In all the states where such contracts have been in use, they have always been regarded and treated, both in practice, and in the courts, as a contract distinctively, and of an important character. *Learned* v. *Bryant*, 13 Mass. 222 ; *Bursley* v. *Hamilton*, 15 Pick. 40 ; *Jones* v. *Gilbert*, 13 Conn. 507.

But if the receipt is a contract, and as such, not subject to be controlled by parol evidence, it is in vain to affect to convince

ourselves that this evidence does not vary or qualify the writing. It in effect supersedes it, and, as was held in *Kelly* v. *Dexter*, 15 Vt. 320, holds, if the additional stipulations are binding, that not only no action of trover will lie, but no action of contract, also. For in this last case that was the precise point decided. But in that case it was allowed, because the oral contract for sale of the property, was made *at a subsequent time*, and so must have been intended to supersede the written contract. This is the only ground upon which effect was attempted to be given to the agreement of sale, in opposition to the contract evidenced by the receipt.

II. But in the present case there seems to have been nothing peculiar in the transaction. It was all done before the receipt was executed, and cannot be made to control the receipt on the ground it was subsequent and independent. Nor can it be claimed that any objection to the evidence was waived at the trial, as the evidence was all received, " subject to all legal objections."

What then was this transaction ? The sheriff was proceeding to sell the goods, in the due course of his duty, for the benefit of the first attaching creditors, as far as they reached. The debtors and those creditors not likely to be reached by the avails of the goods, unless sold at a higher rate, all being represented by the defendants, proposed to the plaintiff to have the goods sold at retail, by an agent appointed for that purpose. He declined to take any responsibility in the matter. The defendants then applied themselves to the attorney of the first attaching creditors, who finally consented that the sheriff might take the defendants' receipt for the goods valued at two thousand dollars, which embraced a contract to return the goods on demand, and in legal effect, made them liable in trover, at any moment, for the goods at the value stipulated. It is said the attorney consented that upon taking such receipt, the sheriff should deliver the goods to the defendants, " to be disposed of in the manner desired by them ;" in other words to do what they chose with them, which is the ordinary expectation when an officer takes a receipt for goods attached. But are we to infer that these are the terms of the contract ? that Mr. Dillingham, or the plaintiff, would

have consented to the insertion of any such clause in the receipt? Surely not. The defendant will not argue this. It is obvious that both Mr. Dillingham and the plaintiff expected the ordinary security of a receipt, in the usual form, to the amount of two thousand dollars, probably about what they expected the goods would bring at auction, and were content the defendant should have the benefit of the experiment of sale, in his mode, if he would secure them all they expected by a sale in the legal mode. And the defendants no doubt must have so understood the matter. There is nothing in the case tending to show that Mr. Dillingham or the plaintiff consented to have anything to do with the defendants' experiment of selling the goods at retail. They were to run the risk of that and have the benefit of it, which seems to have been some three hundred dollars. And now to deprive the prior creditors of the full benefit of the contract for which they stipulated as their indemnity, would be both illegal and unjust, as it seems to us.

Considerable stress, at the argument of this case for the defendant, was placed upon the facts offered to be proved at the trial in the county court, as tending to show that all the parties interested in the bailment were aware, at the time it was made, of the purpose of the receiptors in regard to the disposition of the property, as tending to show the case similar in principle to that of *Cross* v. *Smith,* decided in Washington county in 1859. But if this were conceded, it would only show that the principles of the cases were not consistent with each other, and consequently, that both could not stand. And in that view it would seem to me more just and reasonable to abandon the case of *Cross* v. *Smith,* than to change a long established course of decisions upon so important a subject as the present, and where the result would be inevitable injustice to the parties' affected by such change.

But it is not very apparent that this case ought to stand upon the same principle, as that of *Cross* v. *Smith.* That was a contract made between private persons, having full power to dispose of the property and intending to do so. The transaction was, in fact, a mere sale of the property, between private parties, and nothing more. And the decision of the court, was that the

contract should be construed according to the purpose and intention of the parties, and that any sham conditions which the parties saw fit to attach to it, for the purpose of evading the statute relieving the body from imprisonment for debt, should not prevail.

In the present case the receipt is a mode of bailment for the ease of debtors, universally sanctioned by the jurisprudence of the State for half a century, whose effect had been fixed by repeated decisions of this court, and well known to the parties at the time of entering into the contract, which was made for a legitimate purpose, to accomplish a desirable result, in exact conformity with the known powers of the parties; and to admit the testimony offered, would be to divert the contract both from its purpose and intention, and equally from the authority and rights of the plaintiff, as well as his intention. It is thus made obvious, we think, that the two cases are essentially different in principle, and that the analogy attempted to be raised between them is not founded upon any just or sound view of the character and purpose of the two classes of contracts.

The judgment is affirmed.