A. J. SOULE *v.* A. N. AUSTIN AND A. M. AUSTIN.

R. R. SHERMAN *v.* ALBURN MEARS.

[TWO CASES.]

*County Court. Supreme Court. Wilful and Malicious Act or Neglect. Exceptions. Officer. Receipt. Attachment. Trover.*

In an action where the county court may grant a certificate that the cause of action arose from the wilful and malicious act or neglect of the defendant, &c., the allowance or refusal of such a certificate is ordinarily a matter resting in the discretion of the county court, and their decision can not be revised by the supreme court.

But it is otherwise, if the county court grant such a certificate where from the form of the action none can be legally granted, or if they refuse one upon the ground that the form of action does not allow it.

Though, where an officer has taken a receipt for property attached, and has allowed it to go back into the debtor's possession, he is, by a legal fiction, permitted to maintain trover for it, yet the failure of the receiptors to return the property is substantially a breach of contract and not a tort, and a certificate can not properly be given in such an action of trover, that the cause of action arose from the wilful and malicious act or neglect of the defendant, &c.

EACH of these cases was trover upon an officer's receipt. In the case of *Soule* v. *Austins,* the facts were as follows: The plaintiff, as deputy sheriff, having in his hands for service a writ against the defendants, on the 22nd of April, 1861, went to their residence in Milton, and informed them, that he had such a writ, and must attach personal property thereon. A. M. Austin then owned fifty-three cows, which he had leased with his farm to one Barrett, for one year from March 15th, 1861, and which were then in Barrett's possession under such lease. A. N. Austin at that time owned and had in his possession five horses and four covered buggies. The plaintiff did not designate any particular horses, buggies or cows as the ones which he would attach or have named in the receipt, but it was agreed between him and the defendants that they should execute to him a receipt for two buggies, two horses, and four cows, and that he should make return on the writ that he had attached such

property thereon. The receipt was accordingly immediately executed, and the defendants therein acknowledged the receipt of such property, as having been attached by the plaintiff on that writ. By the terms of the receipt the defendants promised to return the property to the plaintiff on demand, and the officer made return on the writ pursuant to the aforesaid agreement. No particular cows, horses or buggies were designated by the receipt or return, nor intended by the parties in making such agreement. The plaintiff took the receipt, but took no posses- sion or control of, or did anything to, any of the property named in it.

For more than a week previous to the 28th of June, 1861, the defendants knew that they were insolvent, and must soon fail. While in this situation the plaintiff called on A. N. Austin for another signer to the receipt. Austin, in order to induce him to forego such request, falsely told the plaintiff that he was perfectly safe, and that he ought not to ask for another receiptor. On the 28th of June, 1861, the defendants failed, 'and all their attachable property, including A. M. Austin's cows, leased as above mentioned, was either assigned by them to such creditors as they saw fit to prefer, or was attached by other creditors. A. N. Austin actively assisted in procuring attachments to be made of his horses, in order that certain creditors; whom he desired to prefer, might have their claims secured by such attachments, knowing that by so doing, and by the other attach- ments and assignments of his and A. M. Austin's property, the plaintiff would be left without security. During the time the defendants were expecting to fail, and on the day they failed, they might, if they had seen fit, have set apart two covered bug- gies, and two horses, and placed them in the plaintiff's posses- sion, and have thus far secured him for that portion of the pro- perty attached and receipted, and they might also have assigned to him two cows, subject to Barrett's right to them under the lease. The suit in which the plaintiff attached the property in question, was at the time of the trial in this case, still pending.

The plaintiff requested the court to adjudge that the cause of action arose from the wilful and malicious act or neglect of the defendants, insisting, first: that the acts of the defendants,

Soule *v.* Austins.

while in contemplation of bankruptcy, in assigning the property attached or procuring it to be attached, or aiding therein, so as to give a preference to other creditors and prevent the plaintiff from retaking it, was a wilful and malicious act or neglect; secondly, that the act of A. N. Austin, when expecting to fail, in falsely representing to the plaintiff that he was perfectly safe, &c., and also his neglect at that time to return the property attached to the plaintiff, justified such a certificate against him; thirdly, that the defendants, anticipating their own failure, and having knowledge that the property receipted would soon be attached, by omitting to return the property to the plaintiff, but allowing it to remain where it could be attached by other creditors, *wilfully neglected* to keep and redeliver the property attached, and therefore were liable to have such a certificate granted against them.

The county court rendered judgment for the plaintiff for $   damages and costs, and, in regard to the motion for the certificate, the court considered that the facts above stated did not tend to show, and would not legally sustain a judgment, that the cause of action arose from the wilful and malicious act or neglect of the defendants, or either of them, and therefore denied the motion, subject to a rule, that if upon the hearing of the exceptions in the supreme court, that court should be of the opinion that the facts would legally sustain a judgment granting the motion, then that judgment should be rendered as of the then present term of the county court, that the cause of action did so arise, &c. To the decision of the county court denying the motion and certificate, the plaintiff excepted.

In the case of *Sherman* v. *Mears*, the facts were substantially similar to those in that of *Soule* v. *Austins*, with the exception that in the former the property in question, three hundred sheep, was actually attached by the plaintiff, but afterwards given up to the defendant on the execution of the receipt. The court rendered judgment for the plaintiff for $   and costs, and rendered the same judgment in respect to the motion for the certificate in *Sherman* v. *Mears* as in *Soule* v. *Austins*, to which the defendant, Mears, excepted.

*H. S. Royce, Hubbell & Dewey, W. C. Wilson,* and *James S. Bnrt,* for the plaintiffs.

*H. B. Smith,* for the defendants.

POLAND, CH. J. These cases do not in our judgment present any question of law decided by the county court, which this court can revise. The granting or refusing a certificate might become a legal question so as to be brought up on error from the county court. If the county court were to grant a certificate in a case where, from the form of action, none could be legally granted, or if they were to refuse one upon the ground that the form of action would not allow it, undoubtedly such decision might furnish proper ground for exception or writ of error to this court.

But in an action where the county court may grant a certificate, if the evidence shows the cause of action arose from the wilful and malicious act or neglect of the defendant, the allowance or refusal of a certificate becomes necessarily a matter of fact for the decision of the county court, requiring the exercise of the judgment and discretion of that court, which this court can not revise ; *Robinson* v. *Wilson,* 22 Vt. 35.

The cases might be disposed of without further observation, but as the counsel have argued the propriety of granting certificates in such cases, it may not be out of place for us to state our view in relation to the action of the county court.

The statute is intended to apply to cases of tort, and not to breaches of contract. Its object is two-fold, partly remedial, partly punitory; to furnish a more effectual remedy to a party who has suffered injury from the wanton and malicious act or conduct of another, and to punish such offender for such wanton and wicked violation of another's rights.

Under our system of attaching property on *mesne process,* whenever the property is left by the officer in the hands of the debtor, by his procuring a receipt for it, it is universally understood that the officer relies for his indemnity upon the receipt,

and not upon the property. When left in the debtor's hands it is liable to attachment by other creditors, and to sale by the debtor, and the object in procuring it receipted is to give the debtor back his property, by his furnishing a security in its place. And although in this state the officer has in form been allowed to treat the receiptor as bailee of the property for him, and maintain trover against him for non-delivery on demand, yet this has been rather a legal fiction, and the receipt has been treated substantially as a contract between the receiptor and officer, measuring and governing their respective rights. This was carried so far in the case of *Brown* v. *Gleed et al.*, 33 Vt. 147, as to allow an officer to maintain trover upon an officer's receipt, where it was shown that the property had been disposed of by the consent of the officer. This was held upon the ground, that it appeared that this consent was given upon the expectation of all parties that the receiptors were to be liable to the officer upon the receipt.

The sustaining of trover in that case was certainly going quite wide of the ordinary principles governing that action, and the decision was made upon the ground that such form of action had always been allowed on officers' receipts, although they were purely matters of contract between the parties.

In the case of *Soule* v. *Austins*, no specific property was ever attached, and though the defendants had property of the kind named in the receipt to a greater amount than that receipted, yet it was never separated and set apart, or taken possession of by the officer. In fact it was never attached, and though the receiptors might be estopped by their receipt to deny that, so far as maintaining the action was concerned, they were not, on the plaintiff's application for a certificate.

In the other case of *Sherman* v. *Mears*, the sheep were actually attached, and went back into the defendant's possession, he giving his receipt to the officer for the same.

But as already said, we think the officer must be regarded as having yielded up his claim to the property as between him and the debtor, relying upon the obligation and security of the receipt, and that any failure to meet that must be regarded merely as a breach of contract, and not a tort.

What has been said is also a sufficient answer to the claim of the plaintiff's counsel, that certificates should have been granted on the ground that the defendants held the property, for the conversion of which they were sued, in trust for the plaintiffs.

Exceptions dismissed.