# CASES ARGUED AND DETERMINED

IN THE

# SUPREME COURT OF VERMONT

H. D. STANNARD *v.* M. L. TILLOTSON AND H. W. TILLOTSON.

January Term, 1914.

Present: POWERS, C. J., MUNSON, WATSON, HASELTON, and TAYLOR, JJ.

Opinion filed May 9, 1914.

*Attachment—Custody of Property—Receipt—Conclusiveness—*
  *Liability of Receiptors—Breach of Contract—Retaking of*
  *Property by Subsequent Attachment—Effect.*

In an action by a constable on a receipt taken from defendants for attached property, evidence *held* to show that, under a subsequent attachment, plaintiff intended to and did take actual possession of a part of the receipted personal property and had such custody and control thereof as would exclude others from exercising dominion over it.

The ordinary receipt, taken by an officer for attached property, concludes the receiptors from either questioning the attachment or relying on want of consideration for the execution of the receipt.

The signers of the receipt, taken by a constable for realty and personalty attached by lodging the required copy in the town clerk's office, cannot complain, when sued by the constable for failure to return the personalty, that he did not comply with P. S. 1454, providing that in such case the officer shall withdraw the copy

from the town clerk's office, and cause to be recorded a certificate
that the attached personalty has been receipted, since the receiptors
are not interested in having the records cleared of the attachment.

A receipt, taken by a constable for attached property is not void be-
cause it purports to receipt for both realty and personalty.

A receipt, taken by a constable for attached property and reciting that
the receiptors agree to keep the property safe and deliver it in
good condition to the constable, and to save him harmless from
damages resulting from his having entrusted it to their care, made
the receiptors bailees with the duty of preserving and redelivering
the property on demand, or of saving the officer harmless, and are
liable for failure to do so.

The receiptors of attached property allow it to remain in the possession
of the debtor at their peril, for there it is subject to attachment
for his debts and may be disposed of by him.

Where an officer takes a receipt for attached property the attachment
is not thereby released, and the possession and the right of pos-
session still remain in him, since the receiptor's possession is his.

The taking of a receipt for attached property is a mode of bailment for
the ease of debtors, and its purpose is to provide for the custody
of the property pending final judgment, to relieve from the hard-
ships incident to attachment on mesne process, and to secure the
officer against loss by surrendering possession.

Where attached property is receipted, the attaching officer, for any
reason satisfactory to him, can require the return of the property
at any time before the attachment lien is lost, and, on failure to
deliver, can maintain trover against the receiptors; but by retaking
the property the contract to redeliver would be terminated.

While the liability of receiptors of attached property is contingent on
the officer's liability on account of the attachment, where, after
judgment in favor of the attaching creditor, everything has been
done requisite to charge the receipted property, the receiptors can
escape liability on the receipt only by showing that they are ex-
cused from delivering the property on demand.

A constable who took a receipt for attached property did not inpliedly
agree that he would not impress other liens on the property or
that he would not retake it, and so did not breach the contract
by subsequently attaching the receipted property for other debtors.

Where a constable took a receipt for attached property, the mere levy-
ing by him of subsequent attachments on the receipted property
by lodging the required copies in the town clerk's office did not

amount to such a retaking of the property as would release the receiptors from their contract to redeliver it.

Where a constable took a receipt for attached property that remained in the debtor's possession, and subsequently, as deputy sheriff, and under a writ of attachment in favor of another debtor, took, and for ten days kept, actual possession of a part of the receipted property, he thereby terminated the bailment as to that property and released the receiptors from liability for it, although at the end of those ten days the suit was discontinued, and the property restored to the debtor intact.

The total value of attached realty and personalty, stipulated in the receipt therefor given the attaching officer, is conclusive, and must be taken as the basis of the determination of the receiptors' liability to the officer.

Where attached realty and personalty is receipted, and its total value stipulated in the receipt, and subsequently a part thereof is so withdrawn from the receiptors' custody as to discharge their liability *pro tanto*, their liability for failure to return the rest of the property should be determined by ascertaining the proportion, at the stipulated value, that the value of the property retained by them bears to that of the property so withdrawn.

ASSUMPSIT on an officer's receipt for attached realty and personalty. Plea, the general issue, with notice of the defences recited in the opinion. Trial by jury at the March Term, 1913, Orleans County, *Stanton*, J., presiding. At the close of all the evidence both parties moved for a directed verdict. Plaintiff's motion was granted, and a verdict directed in its favor for $5,773.79 and costs, and judgment thereon, to which the defendants excepted. The defendants' motion was overruled, subject to their exception; and the jury returned the special verdicts recited in the opinion.

*J. W. Redmond* for the defendants.

*Young & Young* for the plaintiff.

TAYLOR, J. This is an action on an officer's receipt taken for attached real estate and personal property. Plea, the general issue with notice. At the close of the evidence both parties moved for a directed verdict. The court overruled the de-

fendants' motion and directed a verdict for the plaintiff. Special verdicts were taken on certain questions and judgment was rendered for the plaintiff on the directed verdict, to all of which the defendants excepted.

One Irvin Stephenson owned certain real estate in the village of Lowell, Vt., where he conducted a general retail store. He lived with his family in rooms over the store and occupied the premises as a homestead, owning no other real estate. On August 28, 1909, the plaintiff, as constable of the town of Barton, served a writ of attachment on said Stephenson in favor of the town of Lowell, returnable to the Orleans County Court, commanding him to attach property to the amount of eight thousand dollars, and thereon attached said real estate and all of the personal property in the store and other buildings on the premises, by lodging a copy of said writ in the town clerk's office in conformity with the statute. The writ was duly served by the plaintiff and returned into court.

The property attached on said writ was described in the plantiff's return thereon as "all the goods, wares and merchandise, consisting of dry goods, groceries, hardware, furnishings, and all stock in trade, also all fixtures, safes, cash registers, scales, show cases and tables, also all oil tanks now in the store, barns or storehouses owned or occupied by said defendant in said Lowell; also all the real estate with the defendants' right in equity to redeem the same, situate in said town of Lowell and bounded as said town is bounded." The plaintiff did not take any of the property attached on said writ into his possession before he took the receipt involved in this action except such possession as he had in law by attaching the property by lodging a copy in the town clerk's office. After the attachment was thus made and while the attached real estate and personal property was in the physical possession of Stephenson, the defendants executed and delivered to the plaintiff the receipt on which this action is based, of which the following is a copy of the material portions:

"*Town of Lowell* v. *I. Stephenson.* Received for safe keeping of H. D. Stannard, constable, the following described personal property attached on a writ dated August 28, 1909, in favor of the town of Lowell, the plaintiff in the above entitled cause; all the goods, wares and merchandise, consisting of dry goods, groceries, hardware, furnishings, and all stock in trade,

also all fixtures, safe, cash registers, scales and show cases and tables; also all oil tanks now in the store, barns or storehouses owned or occupied by said defendant, also all the real estate with the defendants' right in equity to redeem the same, situate in said town of Lowell. All of the agreed value of $8,000.00; which property I promise to keep safely and deliver in good condition to H. D. Stannard, constable, or to any lawful officer who may hold an execution issuing on the judgment in said action, on demand, or pay the amount of $8,000.00, and I further agree to save him, the said H. D. Stannard, harmless and indemnified from all costs, charges, damages and expenses, by reason of his having entrusted the aforesaid property to my care.

M. L. TILLOTSON,

H. W. TILLOTSON.''

The property described in the receipt was suffered to remain in the physical control of Stephenson who continued to conduct the business as before. The plaintiff did not withdraw the copy of the writ lodged in the town clerk's office and did not make and cause to be recorded a certificate that the attached property had been receipted, as required by P. S. 1454. Subsequently one Milo Hines of Lowell, who was then its town agent, brought suit against Stephenson returnable to Orleans County Court demanding damages in the sum of $5,000.00. This writ was placed in the hands of the plaintiff for service and was served by him, as constable, on December 6, 1909, by attaching the real estate and all of the personal property covered by the original attachment and the receipt that remained in Stephenson's possession on the premises. This attachment was made by lodging a copy in the town clerk's office. The service was duly completed and the writ returned to and entered in court, where the cause remained pending until the March Term, 1911, when the case was entered ''settled and discontinued.''

On December 14, 1909, one F. B. Lambert, who was then one of the selectmen of the town of Lowell, commenced a suit against Stephenson returnable to Orleans County Court demanding damages in the sum of $5,000.00. The writ was delivered to the plaintiff as constable for service and on December 23, 1909, was duly served by him by attaching the real estate and such of the personal property covered by the original attachment and the receipt as then remained in Stephenson's possession on the premises. This attachment was also made by lodging a copy in

the town clerk's office and the service was duly completed and the writ returned to and entered in court. This action also remained upon the docket of the court till the March Term, 1911, when it was entered ''settled and discontinued.'' The plaintiff did not take physical possession of the property attached on the Hines and Lambert writs and did not exert any right or claim to said property, except what in law he had and exercised by attaching the property in the manner stated.

On July 27, 1911, the Barton Savings Bank and Trust Co. of Barton commenced a suit likewise returnable to Orleans County Court against said Stephenson and others demanding $7,500.00 in damages. This writ was delivered for service to the plaintiff, as a deputy sheriff, he having ceased to be a constable; and, as such deputy sheriff, on that day he made service of said writ in part by attaching as the property of said Stephenson all the goods, wares and merchandise then in the possession of said Stephenson in and about his store and store buildings. The property thus attached included in value nearly one-half of the personal property that the defendants had receipted. This attachment was made at the outset by lodging a copy in the town clerk's office. After the writ had been further served by attaching property of the other defendants and the service had been completed by due delivery of copies to Stephenson and the other defendants, the plaintiff demanded and received from Stephenson the key to the front door of the store where the property attached on this writ then was. Thereupon the plaintiff placed keepers in said store, one of whom was constantly in the store, and kept them there until August 7, 1911, when the bank discontinued its suit, not having entered the writ in court. On that day the plaintiff withdrew the keepers, surrendered the key of the store to Stephenson and all the property therein, which included such of the property covered by the receipt as was in Stephenson's possession in and about said store when the plaintiff took the key on July 27, 1911.

The real estate and all of the personal property surrendered by the plaintiff to Stephenson after the keepers were withdrawn passed into the hands of Stephenson's trustee in bankruptcy and was administered by the court of bankruptcy, Stephenson having been adjudged an involuntary bankrupt on November 24, 1911.

Such proceedings were had in the action of the *Town of Lowell* v. *Stephenson* that, at the September Term, 1912, of Orleans County Court, the plaintiff town obtained judgment against Stephenson for $7,143.56 including costs, an execution thereon was issued and delivered to the plaintiff as deputy sheriff for collection. Everything was duly and seasonably done after judgment that was necessary to charge defendants on said receipt and the plaintiff duly returned the execution unsatisfied. Subsequently the Town of Lowell applied to the bankruptcy court to have the proceeds of the sale of the real estate above the homestead paid over to it to be applied in part satisfaction of its judgment; and such proceedings were had on this petition that on November 25, 1912, that court ordered $1,600.00, being the proceeds of such sale in excess of the homestead, to be paid to said town to apply on said judgment. The amount of the directed verdict in this case is the balance of the judgment remaining unsatisfied after said $1,600.00 was applied, with interest.

By the special verdicts the jury found that on August 28, 1909, the value of the real estate attached was $2,500.00 and the value of the personal property covered by the receipt was $4,666.00; that on July 27, 1911, the value of the personal property covered by the receipt and then in Stephenson's possession was $2,117.00; and that its value was the same when it later passed into the hands of the trustee in bankruptcy.

The defendants claimed on the trial below on the uncontradicted evidence that, during the time the plaintiff had keepers in charge of the store and property, he was in exclusive possession thereof, while the plaintiff claimed the contrary. On this question the transcript of the evidence is referred to and made controlling. An examination of the transcript discloses the following facts bearing upon this question: The post-office at Lowell was then located in one corner of the store; Stephenson's wife was then postmistress; there was a door leading from the tenement over the store occupied by the Stephensons, into said store; there were other doors opening into said store, one leading into a room formerly used as a town clerk's office and thence by another door to the street, another opening to the land in the rear of the store through the cellar; the only key delivered to the plaintiff was the key to the front door of the store; this door was open at all times during business hours and

the public had free access to the store to transact business at the post-office; Stephenson told customers who desired to make purchases that he was not then selling goods but gave no reason therefor; the Stephensons were in the store a considerable part of the time and had free access to the store through the door leading to their tenement; the keepers in no way interfered with their free access to all parts of said store and said nothing to any one except the Stephensons indicating the capacity in which they were there; the keepers saw that no goods were sold or removed from said store except they permitted the Stephensons to take from the grocery department any supplies desired for their table. On this subject plaintiff testified that he "put a man in charge of the property"; that he was there himself some of the time; that he "kept charge of that property day and night"; that "I put those fellows in there to see that there wasn't any of it lugged off"; that he sold some oranges, lemons and eggs the proceeds of which were handed to Stephenson when the keepers were withdrawn; that he did not allow anybody to take the goods; that he "prohibited" the Stephensons "taking any goods out of the store, as well as selling them, except what they needed for their family use,—prohibited them from having anything to do with them otherwise"; that when he first went into the store to make this attachment he "told him what my business was, that I was to attach the property and take possession," and that thereupon he "demanded the key."

There seems to be but one conclusion to be drawn from this evidence. It is clear that the plaintiff intended to and did take possession of the personal property in question when he demanded the key to the store and placed keepers over it. That he had such custody and control of it as necessarily to exclude acts of dominion over it by others is not open to doubt. *Newton* v. *Adams et al.,* 4 Vt. 437. Such of it as the Stephensons used was taken by his permission, and the evidence clearly indicates that his agents intended to and did secure the property from all outside interference. Whether it was such a possession as would have protected the property from subsequent attachment by other creditors is not the question here.

Three principal questions are presented for our consideration:

(1). Did the court err in overruling the defendants' motion for a directed verdict? (2). Was the plaintiff entitled to have

a verdict directed? and (3) if so, was the verdict directed for the correct amount? The grounds of the defendants' motion relied upon here were in substance: (1). That the receipt declared on was an attempted bailment of both personal property and real estate, which is a legal paradox; and so the contract is void. (2). That after the execution and delivery of the receipt plaintiff made valid attachments of the receipted property, in one of which he took physical possession of a part of the property, and thereby breached the contract, which is an entire one, and so he cannot recover. (3). That the plaintiff breached the contract by making valid attachments of the property, thus repossessing himself of the property and ending the bailment, and cannot recover. (4). That the plaintiff's failure to comply with P. S. 1454 rendered the receipt void. (5). That there was no consideration for the receipt.

As to the last ground of the motion it is only necessary to observe that the defendants cannot be heard to make the question. They are concluded by the receipt from questioning the attachment or setting up want of consideration. *Spencer* v. *Williams,* 2 Vt. 209, 19 Am. Dec. 711; *Lowry* v. *Cady,* 4 Vt. 504, 24 Am. Dec. 628; *Pettes* v. *Marsh,* 15 Vt. 454, 40 Am. Dec. 689; *Allen* v. *Butler et al.,* 9 Vt. 122; *Stimson* v. *Ward et al.,* 47 Vt. 624; *Bowley* v. *Angire et al.,* 49 Vt. 41; *Brown* v. *Gleed et al.,* 33 Vt. 147.

So far as the failure of the plaintiff to file the certificate required by P. S. 1454 is concerned, the defendants cannot complain. As receiptors they were not interested in having the records in the town clerk's office cleared of the attachment. If the rights of any one were affected thereby, it was not the rights of the defendants in this suit.

While the receipt is unusual in that on its face it purports to be a receipt for both real estate and personal property, still we do not regard the receipt as being void for that reason. Our attention has not been called to any authority supporting the defendants' claim in that regard and there is no principle of law permitting the defendants to avoid their contract, at least so far as the receipt relates to personal property. The fact that the agreed value of the property includes both the real estate and personal property presents the only difficulty there is arising from the real estate's being included. That question will be considered later.

The second and third grounds, relating to the effect of the subsequent attachments of the receipted property can be considered together. It is urged that by attaching the property covered by the receipt the plaintiff broke the contract, that the contract is an entire contract, that by the attachments he repossessed himself of the property and ended the bailment, and that for these reasons the plaintiff cannot recover on the receipt. It will be necessary, at the threshold of this inquiry, to consider the relations existing between the officer and the receiptors under this contract. By it, the defendants received for safe keeping from the plaintiff the personal property described in the receipt, which they promised to keep safely and deliver in good condition to the plaintiff, or to any lawful officer who might hold an execution issuing on the judgment in the action on which it had been attached, on demand or pay the agreed value of the property; and further to save the plaintiff harmless and indemnified from all costs, charges, damages and expenses by reason of his having entrusted the property to their care. The contract is in the usual form of a receipt taken by an officer for attached property and, aside from the fact that it describes both real estate and personal property, presents no unusual features. Under such a contract the defendants, at least as to the personal property, became bailees of the plaintiff charged with the duty of preserving the property and redelivering it on demand or, failing to do that, to indemnify the plaintiff. They undertook to redeliver the property or to show what would excuse the plaintiff from all liability on account of their failure to do so. *Roberts v. Carpenter*, 53 Vt. 678, 681. As bailees of the property the defendants were responsible for its safekeeping but were at liberty to entrust it to the custody of Stephenson if they chose to incur that hazard. The property having been suffered by the defendants to remain in Stephenson's possession it was liable to attachment by other creditors and might be disposed of by him, as much of it was even before the first of the subsequent attachments. It is quite apparent that the defendants expected that Stephenson would continue to sell and use the property as he had theretofore done. *Flanagan* v. *Hoyt*, 36 Vt. 465, 570, 86 Am. Dec. 675.

The plaintiff by the attachment had the possession and right of possession of the property attached. The defendants took it to keep for him. As between the plaintiff and defendants the

possession and right of possession remained as before the receipt was given; it was with the plaintiff, for their possession was in law his. *Beach* v. *Abbott et al.,* 4 Vt. 605. As between the plaintiff and the defendants and between the plaintiff and Stephenson the lien of the attachment was not released by taking the receipt, although by suffering the property to remain with the debtor the hazard of its being attached by other officers at the suit of other creditors was incurred. *Kelly* v. *Dexter et al.,* 15 Vt. 310; *Beach* v. *Abbott et al.,* 4 Vt. 605; *Shepherd* v. *Hall,* 77 Me. 569, 1 Atl. 696; *Parks* v. *Sheldon,* 36 Conn. 466, 4 Am. Rep. 95; *Dejon* v. *Street,* 79 Conn. 333, 65 Atl. 145. A receipt such as the one in question is a mode of bailment for the ease of debtors. *Brown* v. *Gleed et al.,* 33 Vt. 147. The purpose of it was to provide as to the custody of the property pending final judgment to relieve from the hardships incident to attachment on mesne process, with the further object of security to the plaintiff against loss by surrender of the possession. *Fowler* v. *Bishop,* 31 Conn. 560.

Plaintiff could demand the return of the property at any time before the attachment lien was lost and in case the defendants failed to redeliver could maintain an action for its conversion, (*Collins* v. *Smith,* 16 Vt. 9; *Roberts* v. *Carpenter,* 53 Vt. 680); even before judgment. Story on Bail. 133. The plaintiff could at any time retake the property against the defendants' consent when deemed necessary for his security or for any other reason satisfactory to him. *Gilbert et al.* v. *Crandall,* 34 Vt. 188. Although the defendants had surrendered the property to the debtor the plaintiff could retake it, for his special property continued notwithstanding the bailment and delivery over. *Bond* v. *Padelford,* 13 Mass. 394; Story on Bail. 134. But by retaking the property the contract to redeliver it would be at an end. *Beach* v. *Abbott et al., supra.*

While the defendants' liability on the contract was not absolute but contingent by operation of law upon the plaintiff's liability on account of the attachment either to the debtor or creditor, as the case shows everything done that was necessary to be done to charge the property attached, the plaintiff's liability is established and the defendants can defend only by showing that they are excused, in part or the whole, from delivering the property on demand. *Polley* v. *Hazard,* 70 Vt. 220, 40 Atl. 36; *Roberts* v. *Carpenter,* 53 Vt. 678; *Frost* v. *Kellogg,* 23 Vt.

312; *Adams* v. *Fox*, 17 Vt. 361, 364; *Shepherd* v. *Hall*, 77 Me. 569, 1 Atl. 696; *Wright* v. *Dawson*, 147 Mass. 384, 18 N. E. 1, 9 Am. St. Rep. 724; *Ross.*v. *Libby*, 92 Me. 34, 42 Atl. 230; *Richardson* v. *Bailey*, 69 N. H. 384, 41 Atl. 263, 76 Am. St. Rep. 176.

The defendants are clearly liable, at least to the extent of the property disposed of by Stephenson before the attachment in the Hines case, and so were not entitled to have a verdict directed in their favor. That part of the property entrusted to their keeping had been placed beyond their power without interference of the plaintiff; and, if he had then demanded its return and they had offered to surrender what remained within their reach and control, their liability as to that would have become fixed. No sufficient reason is suggested for excusing them from liability at least to that extent now.

It was argued that the plaintiff "breached the contract" by making the attachments in the Hines and Lambert suits and by taking possession of a portion of the goods on the attachment in the bank suit and so cannot recover; but this position is not tenable. The receipt is a unilateral contract. By taking the receipt the plaintiff did not impliedly agree that he would not impress other liens upon the property or that he would refrain from repossessing himself of it, both of which things he was at liberty to do without breaking the contract. Did the attachments in the Hines and Lambert cases by lodging copies in the town clerk's office amount to a retaking of the attached property such as would relieve the defendants from their contract to redeliver it upon demand? The mere act of making the attachments in that way certainly did not interfere with their physical control of the property. It is not necessary to consider what the results would have been had those suits passed to judgment and the property been seized on execution. In that event they might have been able to defend as to that part of the property upon the ground that the plaintiff would, in those circumstances, be estopped from claiming priority of the subsequent attachments. It is the well settled rule, that, if a person delivers property to another to keep, taking a contract for redelivery and afterwards retakes the property the contract is at an end; but it seems apparent that the retaking to relieve the receiptor from liability on his contract must be at least an exercise of actual control over the property. The mere lodging of copies in the Hines and Lambert cases did not divest the defendants, nor

Stephenson with whom they had entrusted the property, of its physical possession. It vested the plaintiff with no different control over the property than he already had, viz.: the right of possession. It impressed upon the property additional liens subject to that of the original attachment but left its custody undisturbed. It must be held that the making of the Hines and Lambert attachments in the way they were made affords no ground of defence to this action.

But the attachment on the writ in favor of the bank presents a different question. Then, as we have seen, the plaintiff took the property into actual possession and it was retained in his custody several days. We think this was such a retaking as to relieve the defendants from responsibility thereafter, so far as the property thus retaken was concerned. As to these goods the defendants stand the same as though on the plaintiff's demand they had returned them to him. To that extent their contract was fulfilled and they had no concern as to what became of the goods thereafter. *Beach* v. *Abbott et al., supra; Rood* v. *Scott et al.,* 5 Vt. 263; *Kelly* v. *Dexter et al.,* 15 Vt. 310. Plaintiff's counsel do not contend that the plaintiff could retake the property and afterwards require the defendants to resume its custody under the receipt. If they cannot be required to resume control over the property, it is because their responsibility with reference to so much of it as the plaintiff has retaken was terminated by the action of the plaintiff.

In their brief plaintiff's counsel make the point that the attachment in the original suit having been made by the plaintiff as constable, the taking possession on the writ in the bank suit in the capacity of deputy sheriff was not such a taking as to terminate the bailment. We think that position is not tenable. No authority is cited in support of the proposition and we know of none. As between the plaintiff and defendants the rights and liabilities of the parties are not dependent upon the official capacity in which the plaintiff was acting at any particular time. It was enough that he was acting under authority of law. When the plaintiff retook the custody of the property it relieved the defendants of its custody as effectually if he acted as deputy sheriff as it would if he continued to act as constable. The defendants were dealing with him as an individual and were not concerned with his official relation to the transaction, except that he was acting lawfully in bailing the property to them.

The extent of the defendants' liability is the value of so much of the receipted property as was not retaken by the plaintiff; while the verdict was directed for a sum based upon the value of the whole, which was error. It remains to consider whether the special verdicts will enable us to render judgment for the correct amount. The value of the real estate and personal property was fixed by the receipt at $8,000. The jury have found that at the time the receipt was given the real estate was actually worth $2,500.00 and the personal property $4,666.00. They have also found that the value of the goods in the store at the time the plaintiff took possession was $2,117.00. The total value of the real estate and personal property stipulated in the receipt is conclusive and must be taken as a basis for arriving at the amount of damages. *Brown* v. *Gleed et al.,* 33 Vt. 147; *Parsons* v. *Strong,* 13 Vt. 235. The findings of the jury as to the actual value of both the real estate and personal property at the time the receipt was given enables us to ascertain the true amount for which the plaintiff should have judgment. For this purpose the real estate may be treated as having been withdrawn from the custody of the defendants and, like the personal property, retaken by the plaintiff so as to discharge the defendants' liability *pro tanto.*

It was held in *Allen* v. *Carty et al.,* 19 Vt. 65, that when a portion of the property receipted has been withdrawn from the custody of the receiptor in such manner as to discharge his liability so far and the value of all the property receipted is expressed in the receipt at one entire sum, the damages, in an action upon the receipt, are to be determined by assuming the value of the whole property receipted to be the sum specified in the receipt, and then ascertaining the just proportion, at that assumed value, which the property retained by the receiptor would bear to the property for which he is not liable. Following this rule, the assumed value of the real estate was $2,790.96 and of the personal property $5,209.04. By the same computation the assumed value of the personal property remaining undisposed of when the plaintiff took possession would be $2,363.38. Thus, out of the property assumed in the receipt as worth $8,000.00 property of the assumed value of $5,154.34 was restored, leaving $2,845.66 to be accounted for. This sum with interest from the date of the demand on the defendants would be the amount the plaintiff would be entitled to recover. The case shows that the

demand was made September 30, 1912, therefore the sum due with interest to May 5, 1914, would be $3,120.50.

The conclusion we have reached renders it unnecessary to consider the effect of the bankruptcy proceedings.

*Judgment reversed and judgment for the plaintiff for $3,120.50 damages and his costs in the county court less the defendants' costs in this Court.*